RECORD NO. 16-1403

In The

# United States Court of Appeals
### For The Fourth Circuit

## IRAQ MIDDLE MARKET DEVELOPMENT FOUNDATION,

*Plaintiff – Appellant*,

**v.**

## MOHAMMAD ALI MOHAMMAD HARMOOSH,
## a/k/a Mohammed Alharmoosh; JAWAD ALHARMOOSH,

*Defendants – Appellees.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND AT BALTIMORE

———————

## BRIEF OF APPELLANT

———————

Haig V. Kalbian
D. Michelle Douglas
KALBIAN & HAGERTY, LLP
888 17th Street, NW, Suite 1000
Washington, DC 20006
(202) 223-5600

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __16-1403__      Caption: __Iraq Middle Market Development Foundation v. Harmoosh et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Iraq Middle Market Development Foundation__
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                    ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: s/ D. Michelle Douglas        Date:    April 25, 2016

Counsel for: Appellant

## CERTIFICATE OF SERVICE
**************************

I certify that on    April 25, 2016    the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Rachel A. Shapiro
Rosalyn Tang
Miles & Stockbridge, PC
11 North Washington Street, Suite 700
Rockville, MD 20850-0000

Mukti N. Patel
Fisher Broyles, LLP
100 Overlook Center,  2nd Floor
Princeton, NJ 08540

Daniel Poretz
King, Campbell, Poretz, PLLC
108 North Alfred Street
Alexandria, VA 22314

s/ D. Michelle Douglas                April 25, 2016
    (signature)                         (date)

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................ iii

JURISDICTIONAL STATEMENT ..........................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........................2

STATEMENT OF THE CASE....................................................3

STATEMENT OF PERTINENT FACTS ...............................3

    A.    The Parties and IMMDF's Allegations ...............3

    B.    The First Maryland Action....................................5

    C.    The Iraqi Proceedings...........................................6

    D.    The Second Maryland Action ..............................8

SUMMARY OF ARGUMENT ..................................................10

STANDARD OF REVIEW ........................................................11

ARGUMENT ...............................................................................14

    I.    The District Court Erred in Granting Summary Judgment Where the Order Acknowledged that Issues of Fact Exist as to Whether Harmoosh Waived his Arbitration Rights ...........................15

    II.    The District Court's Procedural Errors Robbed IMMDF of its Right to Conduct Discovery and Challenge Defendants' Putative Evidence ................................19

        A.    Under Rule 12, a Motion to Dismiss May Only be Converted to a Rule 56 Motion with Notice to the Parties and After a Reasonable Opportunity to Conduct Discovery ................................19

i

B.    The District Court Abused its Discretion When it Granted Summary Judgment on the Basis of Inadmissible Evidence ................................................................................ 23

C.    The District Court Erred in Giving the Moving Party the Benefit of Inferences from the Inadmissible Evidence ............. 27

III.    Summary Judgment Against IMMDF Was Not Appropriate on the Standard Established By Cases on Which the District Court Relied .................................................................................... 32

A.    The District Court's Focus on the Result in *Montebueno* Is Misplaced, But Under the Decision's Reasoning, IMMDF Should Prevail ............................................................. 33

B.    The Other Waiver Cases Examined by the District Court Also Support IMMDF's Contentions ........................................ 36

IV.    The Only Summary Disposition That Could Be Appropriate at this Stage Is a Finding that Harmoosh Waived his Right to Arbitrate ................................................................................. 39

CONCLUSION ................................................................................ 42

REQUEST FOR ORAL ARGUMENT ................................................. 43

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abramson v. Wildman*,
   184 Md. App. 189, 964 A.2d 703 (2009) ......................................................40

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 106 S. Ct. 2505 (1986) ........................................12, 21, 24, 30

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ...........................12

*Clientron Corp. v. Devon IT, Inc.*,
   125 F. Supp. 3d 521 (E.D. Pa. 2015)..........................................................27

*Contracts Materials Processing, Inc. v. Kataleuna GmbH Catalysts*,
   164 F. Supp. 2d 520 (D. Md. 2001)..............................................................26

*Dart v. Balaam*,
   953 S.W.2d 478 (Tex. App. 1997) ........................................................38, 39

*Davis v. Howard*,
   561 F.2d 565 (5th Cir. 1977) ......................................................................20

*Davis v. Zahradnick*,
   600 F.2d 458 (4th Cir. 1979) ......................................................................20

*Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*,
   817 F.2d 250 (4th Cir. 1987) ......................................................................13

*Galloway v. Santander Consumer USA, Inc.*,
   __ F.3d __, No. 15-1392, 2016 WL 1393121 (4th Cir. Apr. 8, 2016) ....13, 18

*Gay v. Wall*,
   761 F.2d 175 (4th Cir. 1985) ................................................................19, 21

*Harrods Ltd. v. Sixty Internet Domain Names*,
302 F.3d 214 (4th Cir. 2002) ...................................................................13, 23

*Haulbrook v. Michelin N. Am.*,
252 F.3d 696 (4th Cir. 2001) ...........................................................................12

*IMMDF v. Harmoosh*,
769 F. Supp. 2d 838 (D. Md. 2011)....................................................................5

*In re Titanium Dioxide Antitrust Litig.*,
962 F. Supp. 2d 840 (D. Md. 2013)..................................................................41

*Int'l Ass'n of Machinists & Aerospace Workers, Seminole Lodge 791 v.
United Techs. Corp., Pratt & Whitney Aircraft Grp., Gov't Products Div.*,
704 F.2d 569 (11th Cir. 1983) .........................................................................20

*Johnson v. RAC Corp.*,
491 F.2d 510 (4th Cir. 1974) .....................................................................20, 21

*Kensington Volunteer Fire Dep't v. Montgomery Cnty.*,
684 F.3d 462 (4th Cir. 2012) ...........................................................................12

*Liberty Mut. Grp., Inc. v. Wright*,
No. CIV.A. DKC 12-0282, 2012 WL 1446487
(D. Md. Apr. 25, 2012)...............................................................................40, 41

*Magriz-Marrero v. Union de Tronquistas de Puerto Rico, Local 901*,
933 F. Supp. 2d 234 (D.P.R. 2013) ..................................................................25

*Maxum Foundations, Inc. v. Salus Corp.*,
779 F.2d 974 (4th Cir. 1985) ...........................................................................41

*McKinney v. Bd. of Trustees of Mayland Cmty. Coll.*,
955 F.2d 924 (4th Cir. 1992) ...........................................................................12

*MicroStrategy, Inc. v. Lauricia*,
268 F.3d 244 (4th Cir. 2001) ...........................................................................13

*Mid Atlantic Telecom, Inc. v. Long Distance Servs., Inc.*,
18 F.3d 260 (4th Cir. 1994) .............................................................................13

iv

*Montebueno Mktg., Inc. v. Del Monte Foods Corp.-USA*,
    No. CV 11-4977 MEJ, 2012 WL 986607 (N.D. Cal. Mar. 22, 2012),
    *aff'd*, 570 F. App'x 675 (9th Cir. 2014) ................................................*passim*

*Muth v. United States*,
    1 F.3d 246 (4th Cir. 1993) ...........................................................................29

*Owens v. Baltimore City State's Attorneys Office*,
    767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom.*,
    *Baltimore City Police Dep't v. Owens*,
    135 S. Ct. 1893, 191 L. Ed. 2d 762 (2015)....................................................11

*Providence Square Assoc., L.L.C. v. G.D.F., Inc.*,
    211 F.3d 846 (4th Cir. 2000) ........................................................................12

*Resolution Trust Corp. v. Northbridge Assocs., Inc.*,
    22 F.3d 1198 (1st Cir. 1994)..........................................................................13

*Rivera–Torres v. Rey–Hernández*,
    502 F.3d 7 (1st Cir. 2007)..............................................................................13

*RTKL Associates, Inc. v. Four Villages Ltd. P'ship*,
    95 Md. App. 135, 620 A.2d 351 (1993) ........................................................40

*The Courage Co. v. The Chemshare Corp.*,
    93 S.W.3d 323 (Tex. App. 2002) .................................................27, 37, 38, 39

*The Redemptorists v. Coulthard Servs., Inc.*,
    145 Md. App. 116, 801 A.2d 1104 (2002) ....................................................40

*Tyco Valves & Controls Distrib. GmbH v. Tippins, Inc.*,
    No. 04-1626, 2006 WL 2924814 (W.D.Pa. Oct. 10, 2006) ..............36, 37, 40

*Wonasue v. Univ. of Md. Alumni Ass'n*,
    No. PWG-11-3657, 2013 WL 5719004 (D. Md. Oct. 17, 2013) ..................24

*World-Wide Rights Ltd. P'ship v. Combe Inc.*,
    955 F.2d 242 (4th Cir. 1992) ..................................................................12, 13

## STATUTES

28 U.S.C. § 1291 ................................................................................2

28 U.S.C. § 1332 ................................................................................1

28 U.S.C. § 1746 ..........................................................................25, 29

MD CODE, CTS & JUD. PROC. §§ 10-701 *et seq.*................................1, 15

MD. CODE ANN., CTS. & JUD. PROC. § 10-704................................15, 16

UFMJRA § 10-701(b)(4) ...........................................................*passim*

## RULES

9th Cir. R. 36-3 ...............................................................................32

Fed. R. App. P. 32.1 ........................................................................32

Fed. R. Civ. P. 12 ............................................................................19

Fed. R. Civ. P. 12(b)(6)...........................................................*passim*

Fed. R. Civ. P. 12(d) ...................................................................19, 21

Fed. R. Civ. P. 44.1 .........................................................................21

Fed. R. Civ. P. 56 ......................................................................20, 24

Fed. R. Civ. P. 56(a).........................................................................26

Fed. R. Civ. P. 56(d) ...........................................................11, 13, 22, 23

Fed. R. Evid. 604 .............................................................................26

Fed. R. Evid. 1002 ...........................................................................25

## **OTHER AUTHORITY**

C. Wright & Miller, 5 Federal Practice and Procedure § 1366 (1969).
Fed. R. App. Proc. 32.1 ............................................................................ 21

## JURISDICTIONAL STATEMENT

This matter, a diversity action brought in the United States District Court for the District of Maryland under 28 U.S.C. § 1332, consists of an application to record a foreign judgment pursuant to the Maryland Uniform Foreign Money-Judgments Recognition Act ("UFMJRA"), MD CODE, CTS & JUD. PROC. §§ 10-701 *et seq.*, and a claim for fraudulent conveyance of property.

After Defendants-Appellees Mohammad Ali Mohammad Harmoosh a/k/a Mohammed Alharmoosh ("Harmoosh") and Jawad Alharmoosh (collectively, the "Appellees" or "Defendants") filed a Motion to Compel Arbitration and Dismiss or Stay Action (Joint Appendix ("Appx.") 40-153), the district court issued an Order and a Memorandum Opinion, both dated March 30, 2016 (collectively, the "Order"). Appx. 307-334. In its Order, the district court ruled first that it would treat the motion as a motion to dismiss Count I of the complaint under Rule 12(b)(6) and a motion to compel arbitration of the claim as to Count II (for fraudulent conveyance). Appx. 310-12. As demonstrated in Section II herein below, the district court effectively converted the motion to dismiss to one for summary judgment and granted that motion, as well as the motion to compel arbitration on the claim for fraudulent conveyance.

Plaintiff-Appellant Iraq Middle Market Development Foundation ("IMMDF" or "Appellant") noticed this appeal on April 7, 2016. Appx. 340. Appellate jurisdiction in this Court is based upon 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Did the district court err in treating the motion to dismiss as a motion for summary judgment without notice to Appellant and without granting Appellant's request for additional discovery in advance of ruling on any converted motion?

2. Did the district court err in determining as a matter of law that Appellant IMMDF failed to establish that Appellee Harmoosh had waived any right to enforce the parties' arbitration clause by litigating the dispute to judgment and through appeal in Iraq?

3. Did the district court err in determining as a matter of law that Appellee Harmoosh was entitled to nonrecognition of Appellant IMMDF's foreign judgment on discretionary grounds based on an agreement to arbitrate where there were disputes of fact as to whether Harmoosh had raised the arbitration clause as a defense when litigating the case in Iraq?

4. Did the district court err by considering inadmissible evidence in granting summary judgment?

## STATEMENT OF THE CASE

Plaintiff-Appellant IMMDF filed this action against Defendants-Appellees on April 20, 2015. The complaint requested that the United States District Court for the District of Maryland record a foreign judgment rendered in favor of IMMDF and against Defendants-Appellees in the Republic of Iraq, and sought to set aside conveyances made for the purpose of hindering IMMDF in its collection efforts as a judgment-creditor.

On May 14, 2015, Defendants-Appellants filed a Motion to Compel Arbitration and Dismiss or Stay Action. IMMDF filed an opposition to the Motion on June 22, 2015, and Defendants-Appellants filed a Reply on August 3, 2015. IMMDF sought leave to file a Surreply on August 6, 2015.

On March 30, 2016, the district court (a) granted IMMDF leave to file its surreply, (b) effectively converted the motion to dismiss to a motion for summary judgment, (c) granted summary judgment to Defendants-Appellees as to Count I of the Complaint (for recognition of the Iraqi judgment) and (d) granted the motion to compel arbitration as to Count II of the Complaint.

## STATEMENT OF PERTINENT FACTS

### A.    The Parties and IMMDF's Allegations

IMMDF is a non-profit corporation formed in the State of Texas exclusively for charitable purposes. Appx. 7, 173, 181-83. It was initially capitalized through a

grant from the U.S. government to make and service loans to Iraqi-owned businesses operating within Iraq with the goal of generating employment and economic growth in that conflict-ridden nation. Its goal was and is to, *inter alia*, encourage business development in Iraq, create employment, and stabilize the Iraqi economy after the fall of the Saddam Hussein regime following the Gulf War in 2003. Appx. 7, 174.

This proceeding represents IMMDF's third attempt to collect on a simple promissory note executed by Defendant/Appellee Ali Mohammad Harmoosh a/k/a Mohammed AlHarmoosh ("Harmoosh") which guaranteed a loan IMMDF made to Harmoosh's company, Al-Harmoosh for General Trade, Travel, and Tourism ("AGTTT"). Appx. 174. In light of IMMDF's mission and its obligations to the U.S. government, its application process was aimed at ensuring its loan funds would generate employment and economic growth in Iraq as well as ensure that the loan funds would be used for their intended purposes. *Id*. Harmoosh was required, during the application process, to establish strong ties to the region, demonstrate that he had an existing business presence in Iraq, and to agree that the funds would be used for the purpose of expanding his existing business in Iraq. *Id*. Harmoosh established his *bona fides* by submitting with his Loan Application, *inter alia*, his passport demonstrating his Iraqi citizenship and a business plan for AGTTT. Appx. 174, 188-215. The business plan described long-standing business ties in Iraq with

4

his existing car dealership and repair shop that employed 50 people and outlined Harmoosh's intent to use the funds to open several new locations around Iraq which would create approximately 90 new jobs. Appx. 199-215. Despite repeated demands, AGTTT failed to repay the loan and Harmoosh failed to pay on the Promissory Note. Appx. 175.

**B.     The First Maryland Action**

As Harmoosh resides in Maryland and has assets there, IMMDF initiated suit on July 30, 2010, by filing a Complaint in the United States District Court for the District of Maryland, captioned *IMMDF v. Harmoosh*, Case No. 1:10-cv-02086-CCB ("First Maryland Action"), alleging a breach of the Promissory Note. Appx. 127-32. AGTTT is based in Iraq and was not subject to the district court's jurisdiction, and it therefore had not been named in the First Maryland Action. Harmoosh successfully moved to dismiss the First Maryland Action, arguing that an arbitration provision contained in the underlying loan agreement applied to the breach of contract claims under the Promissory Note. Appx. 133-42 (*reported as IMMDF v. Harmoosh*, 769 F. Supp. 2d 838 (D. Md. 2011)). In that proceeding, Harmoosh did not seek and was not granted an order compelling arbitration. Appx. 136-42.

C.    **The Iraqi Proceedings**

Before IMMDF could initiate arbitration proceedings in the Kingdom of Jordan (the venue identified in the Loan Agreement) against AGTTT and Harmoosh, it determined that enforcement and collection of an arbitration award in Iraq – where AGTTT's assets were located – would be extremely difficult. Appx. 175. This is because Iraq is not a signatory to the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards. Accordingly, there would be no procedural mechanism in Iraq to allow either party to enforce an arbitral award rendered in Jordan. Therefore, IMMDF decided for a number of reasons, including but not limited to, the relatively high cost of initiating arbitration in Jordan, to attempt to pursue its claim against Harmoosh for breach of the Promissory Note in the courts of the Republic of Iraq. Appx. 218. Indeed, because costs were anticipated to be lower in Iraqi litigation than in either U.S. litigation or Jordanian arbitration, it was not unreasonable to believe that Harmoosh and AGTTT would not object to proceeding in Iraqi courts. It was also determined that AGTTT no longer had any substantial assets in Iraq and was essentially defunct, so IMMDF proceeded with litigation in Iraq against Harmoosh only. Appx. 157.

In the course of the proceedings in Iraq, Harmoosh evidenced his willingness to litigate rather than arbitrate by failing to raise the issue of

arbitrability before the Iraqi trial court. Appx. 218-19; *see also* Appx. 20-39, 221-44. Under the Iraqi Civil Procedure Law, an otherwise arbitrable dispute may be heard by the courts unless a party objects during the first session of the court. *See* Appx. 241-44. As set forth in detail in the Second Dhia Declaration, Harmoosh did not object to litigation before the Iraqi court of first instance during the first session, or indeed at any other time before judgment was issued, thereby waiving any right to enforce the arbitration provision. Appx. 218-20.[1]

On April 9, 2014, the Iraqi Court of First Instance issued a judgment in favor of IMMDF in the amount of $2,000,000.00, plus an additional 500,000 Iraqi dinars (or $424.91 based on the exchange rate as of April 9, 2014) for legal fees and expenses, for a total amount of $2,000,424.91 (the "Iraqi Judgment"). Appx. 20-25. Harmoosh appealed to the Court of Appeals of Baghdad, which affirmed the trial court (the Court of First Instance) on August 3, 2014. Harmoosh then appealed

---

[1] The defenses Harmoosh did assert before the Iraqi trial court revolved around his argument that the court had no personal jurisdiction over foreign, non-Iraqi parties. Appx. 20-25. The Iraqi Court dismissed that argument, reasoning that Article 15 of Iraq's Civil Code allowed jurisdiction when the subject of the case was a contract concluded in Iraq. *Id*. This result also would have been mandated by the fact that Harmoosh intentionally misrepresented his citizenship status in the Iraqi case (and in these proceedings). The evidence makes crystal clear that Harmoosh is and was at the time of executing the Loan Agreement and the Promissory Note, an Iraqi citizen, and indeed, that fact was an important consideration to his receiving the loan in question. Appx. 174, 195. Harmoosh's other argument before the Iraqi courts was that he signed the Promissory Note in his capacity as a shareholder, not individually. Appx. 20-25, 219-220. Again, after considering the argument, the Iraqi trial court rejected that defense based on the explicit wording of the Promissory Note and the facts of the case. *Id*.

the decision of the Iraqi Court of Appeals, this time to the highest available Iraqi appellate court for commercial disputes, known as the Court of Cassation of Iraq, which affirmed the decision of the Court of Appeals on September 22, 2014. Appx. 26-39. The Iraqi Judgment is not subject to any further appeal and is a final and conclusive foreign judgment. Appx. 19.

### D.    The Second Maryland Action

Thereafter, IMMDF sought to have the Iraqi Judgment recognized in Maryland pursuant to UFMJRA by filing a complaint against Harmoosh in the United States District Court for the District of Maryland on April 20, 2015 (the "Second Maryland Action"). Appx. 6-39. The Second Maryland Action also included a count for fraudulent conveyance against Harmoosh and his son Jawad AlHarmoosh, for conveyances made to avoid collection under the Iraqi Judgment. Appx. 11-12. Specifically, Harmoosh made two transfers of property interests in real estate located in Cumberland, Maryland to his son Jawad AlHarmoosh in 2012 (while IMMDF was actively trying to collect on its loan) and in 2014 (a few days after the judgment against Harmoosh had been affirmed by the Iraqi Court of Cassation). *Id*.

On May 14, 2015, Defendants-Appellants filed a Motion to Compel Arbitration and Dismiss or Stay Action (the "Motion"). Appx. 40-153. IMMDF filed an opposition to the Motion on June 22, 2015 (the "Opposition"), and

8

Defendants-Appellants filed a Reply on August 3, 2015 (the "Reply"). Appx. 154-277, 278-89. IMMDF sought leave to file a surreply on August 6, 2015 and attached the proposed submission (the "Surreply"). Appx. 290-305. In its Opposition to the Motion, IMMDF proffered evidence reflecting that Harmoosh had failed to raise any arbitration defense in Iraq by appearing and defending the case on other grounds and not arguing the arbitration clause until the case was on appeal. Appx. 172-277. In their Reply, Defendants refer to the "affidavit" of Harmoosh's Iraqi counsel that ostensibly reflects that the issue was raised before the Iraqi trial court (the "Putative Affidavit"). Appx. 280. The document actually is not a sworn statement and does not so state. Appx. 286. Defendants' Reply also offers a pleading that purportedly was submitted to the Iraqi trial court arguing the arbitration defense, but that document is on its face an appellate brief (the "Iraqi Appellate Brief"). Appx. 287.

On March 30, 2016, the district court issued an order (a) granting IMMDF leave to file its surreply, (b) granting Defendants-Appellants motion to compel arbitration and to dismiss or stay the action, and (c) dismissing the action (the "Order"). Appx. 307-34. In its Order, the district court discusses what standard should apply only in the context of addressing the motion to compel arbitration. Appx. 310 ("A court may treat a motion to compel arbitration as either a motion to dismiss or a summary judgment motion"). However, at varying times throughout

the opinion, the district court references the motion to dismiss and a motion for summary judgment standard almost as though they are interchangeable *Compare* Appx. 323 (in regard to the mandatory grounds for nonrecognition, "Defendants have not established that they are entitled to summary judgment on this mandatory ground of nonrecognition")[2] *with* Appx. 328-29 ("Defendants have demonstrated that they are entitled to judgment as a matter of law regarding this discretionary ground for nonrecognition and will grant Defendants' Motion as to Count I"). If the district court meant to draw a distinction between the standard applicable to the mandatory grounds and the discretionary grounds for nonrecognition, the Order does not indicate that. At the same time, the district court considered evidence outside the pleadings with regard to both issues (*see*, *e.g.*, Appx. 317, 320-23), so it would appear that the district court effectively converted the motion to dismiss to a motion for summary judgment and applied the motion for summary judgment standard for all purposes. In any event, the standard of review for a finding under either standard is the same, *de novo* review.

## SUMMARY OF ARGUMENT

This appeal arises from the district court's conversion of Defendants' Motion into one for summary judgment and granting of that judgment despite its

---

[2]  The district court found that were material disputes of fact regarding the key issue of whether Defendants raised the right to arbitration in the Iraqi court of first instance. Appx. 321-23.

own finding that disputed issues of material fact exist that should preclude judgment. In reaching this finding, the district court ignored IMMDF's request for additional discovery, its Rule 56(d) Declaration, and perhaps most egregiously, drew inferences from the evidence in favor of the moving party rather than the nonmoving party.

Despite finding that disputes of material fact exist when examining the mandatory provisions of the UFMJRA, the district court nevertheless ignored those factual disputes when examining the discretionary bases for nonrecognition, effectively shifting the burden of proof in a manner not justified by any authority cited by the district court. Indeed, the standard and reasoning set out in those authorities would support a finding here that Defendants waived the right to arbitrate this dispute such that the district court's finding of nonrecognition pursuant to the discretionary grounds set forth in the UFMJRA was erroneous. If the facts here support any finding as a matter of law, it is a finding of waiver in favor of IMMDF.

## STANDARD OF REVIEW

This Court reviews *de novo* a trial court's grant of a motion to dismiss. *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 388 (4th Cir. 2014), *cert. denied sub nom.*, *Baltimore City Police Dep't v. Owens*, 135 S. Ct. 1893, 191 L. Ed. 2d 762 (2015). This review accepts as true all factual allegations

in the complaint, and draws all reasonable inferences in favor of the nonmoving party. *Kensington Volunteer Fire Dep't v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir.2012). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

A district court's grant of summary judgment is also reviewed *de novo*, with all facts and inferences viewed in the light most favorable to the nonmoving party. *See Providence Square Assoc., L.L.C. v. G.D.F., Inc.*, 211 F.3d 846, 850 (4th Cir. 2000). "Summary judgment should be granted only when it is perfectly clear that no issue of material fact exists, and it is not necessary to inquire further into the facts in order to clarify the operation of the law." *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 702 (4th Cir. 2001), citing *McKinney v. Bd. of Trustees of Mayland Cmty. Coll.*, 955 F.2d 924, 928 (4th Cir. 1992). The Supreme Court has indicated that all "evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor," and summary judgment should be granted only where that evidence "is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505 (1986). "Not only must the historic facts be not in genuine issue, so must there be no genuine issue as to the inferences to be drawn from them." *World-Wide Rights Ltd.*

*P'ship v. Combe Inc.*, 955 F.2d 242, 244-45 (4th Cir. 1992). In determining whether there is a genuine dispute of fact, the court's role is not to weigh the evidence or determine the truth, only to determine whether on the evidence produced a reasonable jury could return a verdict for the non-moving party. *Id.* at 248-49.

A trial court's refusal to allow discovery prior to summary judgment is reviewed for abuse of discretion. *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002), citing *Mid Atlantic Telecom, Inc. v. Long Distance Servs., Inc.*, 18 F.3d 260, 262 (4th Cir. 1994). In fact, Rule 56(d) "safeguard[s] against judges swinging the summary judgment axe too hastily. *Rivera–Torres v. Rey–Hernández*, 502 F.3d 7, 10 (1st Cir. 2007); *Resolution Trust Corp. v. Northbridge Assocs., Inc.*, 22 F.3d 1198, 1203 (1st Cir. 1994).

The standard of review on motions to compel arbitration is "akin to the burden on summary judgment." *Galloway v. Santander Consumer USA, Inc.*, __ F.3d __, No. 15-1392, 2016 WL 1393121, at *4 (4th Cir. Apr. 8, 2016).

This Court reviews *de novo* a district court's determination that a party's conduct amounts to waiver of the right to arbitrate" *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 250 (4th Cir. 2001) (citing *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc*., 817 F.2d 250, 252 (4th Cir. 1987)).

## ARGUMENT

At its core, this is a garden variety collection case. IMMDF, which was created soon after the overthrow of the Saddam Hussein regime in Iraq more than a decade ago, loaned Harmoosh's company $2,000,000 that he promised to directly invest in a post-Saddam Iraq. Appx. 174. IMMDF funds largely consisted of monies allocated by the United States government (i.e. U.S. tax payer dollars) in the post-Gulf war effort to rebuild a new and democratic Iraq and to assist nascent businesses create jobs and stabilize both the economy and the government. *Id.* IMMDF's intent was crystal clear.

Harmoosh, in order to obtain that loan, emphasized to IMMDF his close ties to Iraq and agreed that the funds would be used exclusively for development of his business in Iraq. Appx. 174. A few short years later, he defaulted on the loan and decamped to Maryland. Appx. 175. When defending against IMMDF's claims against him in Iraq and here in the Second Maryland Action, Harmoosh complained at being haled into court in Iraq, a court he claimed had no jurisdiction over him because he is    a United States citizen. Appx. 46-47, 234-35. The evidence submitted by IMMDF in this action, namely Harmoosh's Iraqi passport, belies that claim. Appx. 196.

Harmoosh also claimed in his Motion that his attorney Mr. Al Waeli was asked to pay a bribe in Iraq, but when Mr. Al Waeli submitted a Putative Affidavit

14

here, he refused to support Harmoosh in this contention. Appx. 149, 286. What Mr. Waeli did include in that Putative Affidavit, amounts to nothing more than vague generalizations about how he raised an arbitration defense before "the court" (not specifying which court) and that the Iraqi trial court "did not consider" the defense. Appx. 286. At best, these vague statements could create an issue of fact that precludes summary judgment. In fact, however, the failure of these representations to squarely meet and refute the detailed evidence submitted by IMMDF indicates that any conclusions of law in this case should have been found in IMMDF's favor and the Iraqi Judgment recognized by the district court.

I.  **The District Court Erred in Granting Summary Judgment Where the Order Acknowledged that Issues of Fact Exist as to Whether Harmoosh Waived his Arbitration Rights**.

The Second Maryland Action was brought under the UFMJRA,[3] which generally extends full faith and credit to a foreign nation's judgment, such that it is entitled to the same full faith and credit as the U.S. Constitution affords to the judgment of a sister state. The statute, however, lays out certain "grounds for nonrecognition" at Section §§ 10-704. That section reads, in relevant part, as follows:

---

[3]  Maryland Uniform Foreign Money-Judgments Recognition Act, MD CODE, CTS & JUD. PROC. §§ 10-701 *et seq.*,

**Due process, jurisdiction, or fraud concerns**

a) A foreign judgment is not conclusive if:
1) The judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law;
2) The foreign court did not have personal jurisdiction over the defendant;
3) The foreign court did not have jurisdiction over the subject matter; or
4) The judgment was obtained by fraud.

**Notice, public policy, or forum concerns**

b) A foreign judgment need not be recognized if:
1) The defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable him to defend;
2) The cause of action on which the judgment is based is repugnant to the public policy of the State;
3) The judgment conflicts with another final and conclusive judgment;
4) The proceeding in the foreign court was contrary to an agreement between the parties under which the dispute was to be settled out of court; or
5) In the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action.

MD. CODE ANN., CTS. & JUD. PROC. § 10-704.[4]

Defendants alleged in their Motion that nonrecognition was appropriate under various mandatory and discretionary bases. Among Harmoosh's defenses under the UFMJRA's mandatory grounds for nonrecognition was the contention

---

[4]   The statute also includes details on when a libel or defamation judgment may be recognized – on the theory that many such judgments will be contrary to the First Amendment – but those provisions do not apply here.

that the Iraqi Judgment should not be enforced because the Iraqi Court lacked subject matter jurisdiction over him due to the existence of an arbitration clause in the loan documents. Appx. 46-47. The district court held that issues of fact exist as to whether Harmoosh raised the arbitration defense during the initial conference before the Iraqi Commercial Court, and therefore "Defendants have not established that they are entitled to summary judgment on this mandatory ground for nonrecognition." Appx. 323.

When the court shifted to considering the discretionary grounds for non-recognition, it again addressed the arbitration issue, this time in the context of UFMJRA § 10-701(b)(4), i.e., whether the Iraqi proceeding "was contrary to an agreement between the parties under which the dispute was to be settled out of court." Appx. 328, n.10. Confusingly, however, the district court in this context ignored its own prior holding that issues of fact exist as to whether Harmoosh raised the arbitration defense, and instead granted summary judgment, holding that IMMDF had not met its burden to establish a waiver of the right to arbitrate. Appx. 328-29.

The Order is unclear as to why the district court placed the burden of proof on Defendants when considering the mandatory grounds for nonrecognition of a judgment under UFMJRA, but appears to have shifted that burden to IMMDF when it considered the discretionary grounds. This burden shifting is not supported

17

by the cases relied upon by the district court in support of the determination that IMMDF failed to establish a waiver. Indeed, as demonstrated in Section IV below, the analysis applied in these cases for determining whether discretionary grounds for nonrecognition under UFMJRA exist supports the conclusion that, based on the evidence actually offered by the parties to date, IMMDF has proven a waiver and the motion to dismiss should be flatly denied. Even if that were not the case, the most that can be said about Defendants' evidence is that it establishes a genuine dispute of fact. This was the conclusion reached by the district court in regard to the mandatory grounds for nonrecognition, and based on that conclusion, the district court erred both in granting summary judgment against IMMDF on Count I, and in compelling arbitration as to Count II.[5]    Nothing in the district court's Order, nor in any of the authorities on which it relies, eviscerates the usual summary judgment standard as to arbitration or § 10-701(b)(4) of the UFMJRA.

---

[5]    The Fourth Circuit has recently reiterated that the standard of review on motions to compel arbitration is "akin to the burden on summary judgment." *Galloway v. Santander Consumer USA, Inc.*, 2016 WL 1393121, at *4. In granting the motion to compel arbitration as to the fraudulent conveyance claim, the only additional element the district court considered, other than those separately determined in ruling on Count I, was whether the fraudulent conveyance dispute arose "out of or in connection with the Loan Agreement" such that it would be subject to arbitration. Just as in Count I, however, Harmoosh waived his right to enforce the arbitration agreement, and therefore Defendants have failed to establish that they are entitled to judgment as a matter of law as to their motion to compel arbitration of the fraudulent conveyance claim. Accordingly, that portion of the Order also must be set aside.

18

## II.   The District Court's Procedural Errors Robbed IMMDF of its Right to Conduct Discovery and Challenge Defendants' Putative Evidence.

The trial court made procedural errors that violate IMMDF's right to prove its case and therefore constitute an abuse of discretion. *See*, *e.g.*, *Gay*, 761 F.2d at 178 ("Because Gay was not afforded an opportunity for reasonable discovery, the district court's treatment of the motion to dismiss as a motion for summary judgment was an abuse of discretion"). Specifically, the court erred in the manner in which it effectively converted the motion to dismiss to a motion for summary judgment without ever providing IMMDF notice of such a conversion and a reasonable opportunity to conduct discovery and present further evidence. Additionally, the district court, when ruling on the converted summary judgment motion, granted summary judgment almost entirely on the basis of a document that failed to comply with the rules of evidence on numerous grounds.

### A.   Under Rule 12, a Motion to Dismiss May Only be Converted to a Rule 56 Motion with Notice to the Parties and After a Reasonable Opportunity to Conduct Discovery.

Rule 12(d) provides that:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

"Reasonable opportunity" requires that the court give some notice to all parties that it is treating the 12(b)(6) motion as one for summary judgment and inform the

nonmoving party of its right "to file countering affidavits or to undertake reasonable discovery in an effort to produce a triable issue of fact." *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979); *see also*, *Johnson v. RAC Corp.*, 491 F.2d 510, 514 (4th Cir. 1974).

The requirement of notice becomes particularly significant where a court is inclined to grant a motion to dismiss, and several circuits have adopted the rule that notice is compulsory before a converted motion for summary judgment may be granted. "[W]here matters outside the pleadings are considered in disposition of a Rule 12(b)(6) motion, so as to automatically convert it to one for summary judgment pursuant to Rule 56, or as one made *sua sponte*, the Rule 56 strictures of notice, hearing and admissibility into evidence are strictly required...." *Davis v. Howard*, 561 F.2d 565, 571 (5th Cir. 1977). The Fifth Circuit in *Davis* further indicated that "departure from literal compliance" might be allowed in certain circumstances, but compliance is mandatory where the case is to be disposed of on a Rule 12(b)(6) motion. *Id.*; *see also Int'l Ass'n of Machinists & Aerospace Workers, Seminole Lodge 791 v. United Techs. Corp., Pratt & Whitney Aircraft Grp., Gov't Products Div.*, 704 F.2d 569, 572 (11th Cir. 1983) (adopting the rule established by *Davis*).

Even where a party has notice that a motion may be converted to one for summary judgment, that alone does not satisfy the requirements of Rule 12(b)(6),

because "[o]nce notified, a party must be afforded a "reasonable opportunity for discovery" before a Rule 12(b)(6) motion may be converted and summary judgment granted. *Johnson v. RAC Corp.*, 491 F.2d 510, 513 (4th Cir. 1974) (internal quotation and citations omitted); *see also* C. Wright & Miller, 5 Federal Practice and Procedure § 1366 (1969). This is because "[s]ummary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5, 106 S. Ct. 2505 (1986).

This Court's decisions indicate that what constitutes a "reasonable opportunity for discovery" may depend on the facts of a particular case, but failure to provide such an opportunity is abuse of discretion. *Gay v. Wall*, 761 F.2d 175, 177-78 (4th Cir. 1985) (conversion of Rule 12(b)(6) motion to one for summary judgment, even with notice, was "wholly inappropriate" and an abuse of discretion where "the plaintiff had barely begun discovery"). Here, IMMDF specifically requested that, if the Motion were not denied in its entirety, "the parties should be allowed to engage in limited discovery and offer foreign law expert testimony pursuant to Federal Rule of Civil Procedure 44.1 related to the mandatory and discretionary bases for non-recognition of the Judgment." Appx. 160, 170. IMMDF further noted that if the district court were inclined to convert the Motion under Rule 12(d), that IMMDF be given notice and an opportunity to conduct

21

discovery. Appx. 169-70. Out of an abundance of caution, IMMDF also included in its Opposition a Rule 56(d) Declaration outlining the discovery that would be needed particularly on the fraudulent conveyance cause of action. Appx. 275-77.

That declaration did not outline specific discovery that would be needed in relation to the Putative Affidavit, because such Affidavit was only submitted with Harmoosh's Reply, but had IMMDF been provided notice of the district court's intent to convert this motion, it would have supplemented its Rule 56(d) Declaration to add discovery needed to investigate the claims set out in the Putative Affidavit. Had IMMDF been given the opportunity, it would have conducted discovery regarding the Putative Affidavit, including *inter alia*, confirming that it was actually signed by the Iraqi attorney in question, obtaining the untranslated version to test for accuracy and nuance, and exploring, in much greater detail, the basis and meaning of Al-Waeli's vague statement that "the court did not consider the [arbitration] defense in both the instance and appeal stages," in order to establish definitively that the Iraqi Court of First Instance did not "consider" the arbitration defense because that defense was never raised in the Iraqi proceedings. Moreover, because the contentions in the unsworn translation proffered by Harmoosh directly contradicted the detailed affidavit submitted by IMMDF's Iraqi counsel – thereby creating a dispute as to material facts which was acknowledged by the district court (Appx. 321-23) – IMMDF should have been

permitted to take the deposition of Harmoosh's witness to determine the basis for the statements made and to an evidentiary hearing at which reasonable credibility determinations could be made as to the conflicting testimony.

Defendants may argue that IMMDF's Rule 56(d) Declaration was insufficient because it failed to outline the specific discovery needed in relation to the Putative Affidavit, but this argument is to no avail where IMMDF otherwise advised the district court in its Opposition that it needed discovery on numerous issues underpinning the Motion, including as to Iraqi law and procedure and the fraudulent conveyance claim. Appx. 160, 169-70, 275-77. Moreover, IMMDF submitted a surreply, with leave of the district court, in which it objected to any consideration of the Putative Affidavit and outlined the basis of its admissibility objections thereto. Appx. 335-341. Under Fourth Circuit law, these circumstances were sufficient to establish the functional equivalent of a Rule 56(d) declaration specific to the Putative Affidavit and other issues. *Harrods*, *supra*, 302 F.3d 214 at 244-45. As a result, it was an abuse of discretion for the district court to convert the Motion to one for summary judgment and grant such motion without permitting IMMDF an opportunity to conduct discovery.

### B. The District Court Abused its Discretion When it Granted Summary Judgment on the Basis of Inadmissible Evidence.

The district court's failure to provide IMMDF notice or allow it discovery, was particular impactful in the case at bar because the court determined that it

would consider the inadmissible evidence submitted by Harmoosh. Appx. 321-22, n.5. IMMDF objected to the evidence – the Putative Affidavit and a translated appellate brief – because both failed to qualify as admissible evidence on numerous grounds and did not bear sufficient *indicia* of reliability to make them probative to the Motion. Appx. 335-41. The district court overruled those objections, noting that, under the 2010 amendment to Rule 56, facts may be established for purposes of a motion for summary judgment by inadmissible evidence, provided "that the party identify facts that could be put in admissible form." Appx. at 319-20 (quoting *Wonasue v. Univ. of Md. Alumni Ass'n*, No. PWG-11-3657, 2013 WL 5719004, at *8 (D. Md. Oct. 17, 2013)). However, Rule 56 also presupposes that a party opposing a motion for summary judgment has had a reasonable opportunity to conduct discovery. *See*, *e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5, 106 S. Ct. 2505 (1986) (summary judgment must be refused where the nonmoving party has not had a reasonable opportunity to conduct discovery). Accordingly, the district court's consideration of the Putative Affidavit, without requiring Harmoosh to demonstrate that such evidence actually could be converted into admissible evidence, when combined with the court's refusal to permit IMMDF to conduct discovery and submit further evidence as requested in IMMDF's opposition to the motion, have denied IMMDF its day in court.

24

In its Order, the district court appears not to dispute IMMDF's contention that the Putative Affidavit is not admissible evidence. Appx. 321-22, n.5. There can be little dispute as to that fact. Defendants, in their Reply to the Motion, refer to the document as an "Affidavit" (Appx. 280-81), but this document is anything but that. It is merely titled "Sub. / Case Brief." Appx. 284. It contains no language indicating it was intended to serve as an affidavit, is undated and was not made under penalty of perjury. *Id.* As such, the Putative Affidavit fails to satisfy even the liberal federal standard allowing submission of a declaration in lieu of a notarized affidavit. 28 U.S.C. § 1746.

Moreover, both the Putative Affidavit and the Iraqi Appellate Brief were submitted only in English, with indications on each that it is a translation, but without a copy of the original Arabic version and without any translator's certificate or statement of qualifications. Appx. 286-88. These unsupported translations do not have any evidentiary value under the Federal Rules of Evidence. *See* Fed. R. Evid. 1002; *see also Magriz-Marrero v. Union de Tronquistas de Puerto Rico, Local 901*, 933 F. Supp. 2d 234, 244 (D.P.R. 2013) (refusing to consider as evidence "translations of plaintiffs' sworn statements" because "the original Spanish language sworn statements were not provided to the court"). Defendants also made no showing as to the qualifications of the translator and because they have failed to provide the Arabic originals, IMMDF is denied

25

any opportunity to conduct an analysis of the accuracy of the translation. *See*

*Contracts Materials Processing, Inc. v. Kataleuna GmbH Catalysts*, 164 F. Supp.

2d 520, 528 (D. Md. 2001) (striking paragraphs of declaration based on improper

translations of German documents on the basis that such translations "are

equivalent to an interpreter's testimony and therefore are not admissible unless the

translator's qualifications are established" pursuant to Fed. R. Evid. 604).[6] Here,

the Putative Affidavit considered by the court amounts to an unidentified, possibly

uncertified translator's unsworn representation of the facts to which a witness in

Iraq would attest if he were to submit a sworn statement. Even under the lenient

standard of Rule 56(a) as amended in 2010, this should not be deemed to have

evidentiary value, and certainly not evidentiary value so as to justify the **granting**

of summary judgment. Given that the party seeking nonrecognition under

UFMJRA bears the burden of proving a basis for nonrecognition, Defendants'

---

[6] Whether this evidence constitutes inadmissible hearsay plays a particular importance here, as Defendants previously offered other hearsay representations in their Motion that, when pressed, they were unable to support with valid testimony. Specifically, Defendants argued that Iraq's legal system is corrupt and therefore the Iraqi Judgment should not be recognized. Appx. 44-46. In support of that contention, Harmoosh submitted an affidavit in which he claimed that his attorney had been asked for a bribe by one or more individuals at the Iraqi courts. Appx. 149. IMMDF objected to this hearsay evidence of what a third party supposedly said to Harmoosh's Iraqi counsel, but when Harmoosh submitted an affidavit from Mr. Al-Waeli, it did not contain any such assertions or, indeed, any reference to such allegations. In their Reply, Defendants excused this fact in a footnote by saying Mr. Al-Waeli "was unwilling to memorialize these allegations in his name for fear of reprisal." Appx. 281, n.1

Motion should have been denied. *See*, *e.g.*, *The Courage Co. v. The Chemshare Corp.*, 93 S.W.3d 323, 338 (Tex. App. 2002) (defendant bears the burden of establishing a basis for nonrecognition; applying Texas version of UFMJRA); *Clientron Corp. v. Devon IT, Inc.*, 125 F. Supp. 3d 521, 522 (E.D. Pa. 2015) (same as to Pennsylvania's UFMJRA).

### C.    The District Court Erred in Giving the Moving Party the Benefit of Inferences from the Inadmissible Evidence.

The district court, having determined it would consider the inadmissible evidence, summarized the Putative Affidavit as follows: "Defendants submitted an affidavit from Harmoosh's Iraqi attorney, Al-Waeli, attesting that he raised the Loan Agreement's arbitration provision before the Iraqi trial and appellate courts." Appx. 321. That is not an accurate description because the Putative Affidavit actually does not state that and, again, is not an affidavit. Instead, the document states – in one very lengthy sentence, that "I assumed the defense as being the attorney of the defendant (Mohammed Ali Al-Harmoosh) *objecting at the court* that my attorney (sic) has a contract [containing an arbitration clause] but the court *did not consider* the defense in both the instance and appeal stages." Appx. 286. Mr. Al-Waeli, if he actually did sign this unsworn translation, is merely stating (i) that he objected "at the court," without specifying whether "the court" is the Court of First Instance or a court of appeals; and (ii) that the Court of First Instance "did not consider the defense," a statement that would be true regardless of whether

Defendants raises the issue before that court. In other words, this appears to be a case of creative drafting intended to give the impression that Harmoosh raised the arbitration defense before the Court of First Instance, when in fact, it was not raised until the appellate stage – just as IMMDF's witness has attested.

Creative drafting also was evident in Defendants' Reply in support of the Motion, in which Defendants claimed that the Iraqi Appellate Brief evidences that Harmoosh "specifically cit[ed]" the contract's arbitration provision "in writing, in a filing submitted to the Court of First Instance." Appx. 280. This assertion is belied by the document itself, which is clearly an appellate brief rather than a pleading submitted to the Court of First Instance.[7]  Appx. 287-88. Nor does the Iraqi Appellate Brief state that the arbitration issue was raised before the Court of First Instance, as claimed by Defendants. *Id*. Instead, at Paragraphs 1, 4, and 5, the Brief identifies issues that the Court of First Instance "didn't take in consideration," (sic) but these issues do not include an arbitration defense. *Id.* Paragraph 2 of that Brief discusses the arbitration defense, but **does not assert** that the issue was raised before the Court of First Instance and rejected. *Id.* Instead, it raises this defense as a new issue, without any reference to any position previously taken by either party before the Iraqi trial court. *Id.* Thus, this document, if

---

[7]   It is apparent that the District Court agreed, as the Order states that "Defendants submitted translations of . . . what appears to be an Iraqi appellate court brief." Appx. 321, n.5.

anything, supports Plaintiff's assertion that the issue was raised before the Iraqi court only at the appellate stage and was therefore disregarded just as it would be by an American court. *See*, *e.g.*, *Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993) (matters raised for the first time on appeal will not be considered).

In stark contrast to Defendants' inadmissible and unilluminating evidence, IMMDF submitted a sworn Declaration of Salam Zuhair Dhia, in compliance with 28 U.S.C. § 1746, which describes in detail each hearing held before the Court of First Instance, avers to his attendance at each and the fact that the arbitration issue was not raised by Harmoosh. Appx. 216-20. Moreover, Mr. Dhia provided as exhibits to his Declaration hearing summaries prepared by the Court which reflect no mention or discussion of an arbitration defense being raised during any of those proceedings before the Court of First Instance, and certainly not at the first appearance of the parties as required by Article 253 of the Iraqi Civil Procedure Law. Appx. 221-44. It is worth noting again that IMMDF's evidence as to waiver was submitted in its Opposition to Defendants' Motion and Defendants therefore had the benefit of this evidence when they submitted their Reply and purported evidence refuting a waiver. Yet Mr. Al Waeli did not directly respond to any allegations contained within Mr. Dhia's declaration, including the details about what specifically occurred at each hearing. He also did not deny that the hearing summaries attached to Mr. Dhia's declaration accurately reflect the hearings that

occurred, much less provide a detailed basis for such a denial. Indeed, in his Putative Affidavit, Mr. Al Waeli provides nothing but conclusory misleading statements that fail to refute Mr. Dhia's detailed evidence.

When one considers the exact words used in the Iraqi Appellate Brief and the Putative Affidavit – rather than Defendants' self-serving interpretation of those words, which the district court appears to have adopted – there actually is no conflict between Defendants' and Plaintiff's evidence. All of this evidence is consistent with the IMMDF's contention that the arbitration issue was never raised before the Iraqi Court of First Instance and was raised for the first time on appeal. Notwithstanding all of these facts, the District Court here concluded in regard to the discretionary bases for nonrecognition that "Despite the parties' competing affidavits, there is no evidence demonstrating that the Iraqi courts found that Harmoosh waived the arbitration provision and deemed the provision null and void pursuant to Article 253. Appx. 323.

In reaching its conclusion, the district court ignores that, in a motion for summary judgment, IMMDF as the non-moving party was entitled to have all reasonable inferences drawn in its favor. *Anderson*, 477 U.S. at 255. Instead, the Court drew those inferences in Harmoosh's favor. Specifically,

- The district court adopted Defendants' false characterization of the Putative Affidavit as attesting that the arbitration issue was raised before the Court of First Instance (Appx. 323);

- The district court discounted the hearing summaries submitted by IMMDF as "merely short summaries of the hearings [which] may not address every issue raised by the parties." Appx. 323. This inference was unjustified by the evidence submitted by either party, and ignores that IMMDF had requested leave to conduct discovery as to Iraqi civil procedure and submit foreign law evidence in the event the Court did not outright deny the Motion.

- The Order ignored the fact that these hearing summaries were submitted by IMMDF's witness Mr. Dhia and were accompanied by his testimony explicitly stating that the arbitration defense was not raised during the first hearing before the Court of First Instance.

- The district court applied an impossible standard when it held that IMMDF could not establish waiver except by offering proof that the Iraqi courts had made an explicit finding "that Harmoosh waived the arbitration provision and deemed the provision null and void pursuant to Article 253. Appx. 323. Such a standard is not supported by any of the cases on which the Court relied in its Order. Indeed, counsel for IMMDF has not been able to identify

a single case in which a waiver based on foreign proceedings can only be proven by evidence that the foreign court made a conclusion to that effect.

Given that all inferences on a motion for summary judgment are to be given to the non-moving party, the district court erred in concluding that IMMDF had failed to meet its burden to prove waiver, as a matter of law, and the Order should be reversed.

**III.    Summary Judgment Against IMMDF Was Not Appropriate on the Standard Established By Cases on Which the District Court Relied.**

In considering § 10-701(b)(4) of the UFMJRA, the district court noted that Maryland courts have not interpreted this provision as applied to arbitration, but the district court did identify several cases in which such an analysis has been performed. The district court's heavy reliance on the decision in *Montebueno* is perhaps understandable given the superficially similar facts, but crucial differences exist which render that reliance misplaced. Appx. 326 (citing *Montebueno Mktg., Inc. v. Del Monte Foods Corp.-USA*, No. CV 11-4977 MEJ, 2012 WL 986607, at *2 (N.D. Cal. Mar. 22, 2012), *aff'd*, 570 F. App'x 675 (9th Cir. 2014)).[8]  Indeed,

---

[8]    The District Court cites only to the decision by the District Court, presumably because the Ninth Circuit's later opinion, *Montebueno Marketing, Inc. v. Del Monte Corporation-USA*, 570 Fed. Appx. 675 (9th Cir. 2014), is designated as unpublished. The Ninth Circuit Rules, however, provide that "Unpublished dispositions and orders of this Court issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1." U.S.Ct. of App. 9th Cir. Rule 36-3, 28 U.S.C.A. Under Fed. R. App. Proc. 32.1, this post-2007 decision may properly be cited and therefore IMMDF will discuss both decisions

32

close examination of all of the cases on which the district court relied demonstrates that, under the standard adopted by these courts, IMMDF has effectively established a waiver.

### A. The District Court's Focus on the Result in *Montebueno* Is Misplaced, But Under the Decision's Reasoning, IMMDF Should Prevail.

As in the case at bar, the *Montebueno* case involved a party seeking recognition of a foreign judgment, where there had also been prior proceedings in the U.S. in which arbitrability had been addressed. *See*, *generally*, *Montebueno I and Montebueno II*. In appealing to the Ninth Circuit, the plaintiff, Montebueno, like IMMDF, objected to the trial court's conversion of a motion to dismiss into a motion for summary judgment without notice and without discovery. *Montebueno II*, at 676-77. That is where the similarity ends, however, and several crucial distinctions exist. The Ninth Circuit overruled the plaintiff's objection to the conversion of the motion because that occurred during oral argument, with the plaintiff's consent, and after plaintiff's counsel conceded that no discovery was needed. *Montebueno II*, at 677. Here, to the contrary, the court effectively converted the motion only in the order granting the Motion when it considered materials outside the pleadings and framed at least some of its findings under the

---

to the extent they shed light on the standard applied and the distinctions between the facts in the *Montebueno* case and the case at bar. The trial court's decision, will be referred to as *Montebueno I* and the Ninth Circuit's decision as *Montebueno II*.

summary judgment standard.[9] Moreover, this holding was reached notwithstanding an explicit request by IMMDF that it be allowed further discovery and briefing in the event the court opted to convert the motion. Appx. 160, 169-70, 275-76.

The Ninth Circuit's basis for rejecting Montebueno's waiver argument – a failure of evidence – also does not apply to the case at bar. *See Montebueno* II at 677. First, it is clear that this was not an issue Montebueno raised before the trial court. *See, generally, Montebueno I.* When the issue was raised before the Ninth Circuit, that court's analysis makes clear that waiver could be a valid defense against a claim for discretionary nonrecognition based on an arbitration clause, but held that there was not sufficient evidence in the record as to what happened in the foreign proceedings to support the finding. In other words, the mere existence of an arbitration clause is not sufficient to justify nonrecognition under § 10-701(b)(4), where the facts show a waiver. Notably, Montebueno actually outlined the procedural details of the foreign proceeding in its submission to the Ninth Circuit, but without any citation to the record (*see* Appellant's Opening Brief, *Montebueno Marketing, Inc. v. Del Monte Corporation-USA*, No. 12-15958 (9th Cir. July 30, 2012), 2012 WL 3164191 at *4-*6 (2014)) which makes clear that such evidence

---

[9]  *See* Appx. 323 (Order at 17) (finding issues of fact relating to whether Harmoosh raised arbitration as a defense before the Iraqi trial court and holding that, "Defendants have not established that they are entitled to summary judgment on this mandatory ground of nonrecognition").

was not presented to the trial court and was not part of the record.[10]  This would explain why the Ninth Circuit did not believe Montebueno had proven its waiver theory. Here, on the other hand, IMMDF presented extensive evidence before the district court on the facts and law supporting its waiver contention, outlining the details of the Iraqi proceedings, all submitted in the form of admissible evidence, while it is the party resisting recognition that failed to provide any evidence to refute IMMDF's facts relating to waiver.

Moreover, even if the Ninth Circuit considered Montebueno's belatedly offered evidence, the record as outlined in Montebueno's brief makes clear that Del Monte had raised the issue of arbitration from the outset in the Philippine proceedings and only proceeded through litigation in the Philippines on sufferance. Here, again, IMMDF has offered substantive detailed evidence to support the conclusion that Harmoosh did not mention arbitration before the Iraqi Court of First Instance, and Harmoosh has only responded with vague language and tortured construction in an effort to imply facts it cannot prove with direct statements.

Factually, there are even more distinctions between the *Montebueno* case and the case at bar. In *Montebueno*, plaintiff pursued the Philippine litigation on a parallel track with the U.S. proceedings, such that it was in the midst of those

---

[10]  This also is apparent from the trial court's Order in which neither a waiver theory nor any facts relating to such a theory are discussed. *See*, *generally*, *Montebueno I.*

proceedings that the U.S. court issued an order compelling arbitration, and yet plaintiff nevertheless went forward with obtaining judgment in the Philippines. Here, the U.S. court in the First Maryland Action resulted in an order dismissing, not an order compelling arbitration [cite] and those Proceedings were completed years before IMMDF instituted its case in Iraq. Appx. 133-34. All of this underscores how, despite the superficial factual similarities between this case and *Montebueno*, the key facts underpinning the waiver argument are quite distinct, and that IMMDF's waiver argument does not suffer from a failure of evidence. In short, if the district court had applied the *reasoning* of the Montebueno decision to the facts of this case, rather than its *result*, the result here would have been different.

### B. The Other Waiver Cases Examined by the District Court Also Support IMMDF's Contentions.

Examination of the other cases cited by the district court in support of its conclusion yield similar results. In the *Tyco* case, for example, the District Court for the Western District of Pennsylvania concluded that it would not enforce a default judgment that was obtained in Germany against an American company that had, immediately upon being served, written to the German court to note that the dispute was required to be arbitrated, but thereafter failed to participate in the litigation. *Tyco Valves & Controls Distrib. GmbH v. Tippins, Inc.*, No. 04-1626, 2006 WL 2924814, at *7 (W.D.Pa. Oct. 10, 2006). The focus of the *Tyco* case is

36

whether to enforce the arbitration clause and a theory of waiver is not addressed. However, it is evident from the facts that waiver would not apply, given that the party resisting recognition of the judgment in *Tyco*, unlike Harmoosh, raised the arbitration clause as a defense from the outset of the foreign litigation. *Id.*

Similarly, the *Courage* case cited by the district court applies an analysis that would yield a finding of waiver if applied to the case at bar, even though waiver was rejected under the facts of that case. *The Courage Co. v. The Chemshare Corp.*, 93 S.W.3d 323, 338 (Tex. App. 2002).

In *Courage*, plaintiff sought recognition of a Japanese judgment obtained despite the existence of an arbitration clause, and the Texas Court of Appeals, after examining how the Japanese case progressed, concluded there was no waiver because the defendant in the Japanese proceedings never reached the merits, but only specially appeared to contest jurisdiction. *Id.* Because the defendant prevailed on those grounds, the case was dismissed before reaching the answer stage and therefore the defendant never litigated to the point where it would be required under Japanese procedure to identify enforcement of an arbitration clause as an affirmative defense. *Id.* These facts are obviously distinguishable from those in the instant case, where IMMDF has offered evidence, not directly refuted by Defendants, that Harmoosh did not raise arbitration at the first hearing as required under Iraqi procedure or at any other time while the case was before the Iraqi trial

37

court and only raised the issue during the first level appeal. Notably, the *Courage* decision provides the most thorough discussion of waiver in the context of UFMJRA § 10-701(b)(4) of any of the cases relied upon in the Order. In that detailed decision, the Texas Court of Appeals makes clear that the burden of proof is on the defendant to establish a grounds for nonrecognition. *Courage*, 93 S.W.3d at 331. At no time does the *Courage* court shift that burden to the plaintiff. *Id.*

Finally, the only other case cited by the district court in reference to the waiver issue is cited as a counterpoint to the other cases, because in it the Texas Court of Appeals refused to overturn a finding of recognition of an Australian judgment that was obtained in defiance of a forum-selection clause calling for litigation elsewhere. *Dart v. Balaam*, 953 S.W.2d 478, 482 (Tex. App. 1997). As the district court describes the case, the judgment was recognized "because both parties failed to enforce agreement's forum-selection clause." Appx. 327 (emphasis in original). It is unclear, however, why the court did not apply this same reasoning to the case at bar to find a waiver where both IMMDF and Harmoosh were content to proceed through litigation before the Iraqi Court of First Instance rather than pursuing arbitration in Jordan before the ICC with three arbitrators, as called for by the arbitration clause in the loan agreement – a procedure that would be extremely expensive for both Harmoosh and IMMDF. Like the defendant in the Australian proceeding, Harmoosh failed to raise any objection before the Iraqi trial court even

though there can be no doubt that he was aware of his right to insist on arbitration, having already obtained dismissal on that basis in the First Maryland Action. Again, applying the *Dart* court's analysis to the case at bar would yield a finding that Harmoosh waived his right to enforce arbitration because he litigated the Iraqi case to judgment on the merits without objection before the trial court.

## IV.    The Only Summary Disposition That Could Be Appropriate at this Stage Is a Finding that Harmoosh Waived his Right to Arbitrate.

Though unstated in the Order, the most likely explanation for the district court's decision in this case is that the court believed the discretion permissible under the discretionary portions of UFMJRA was so broad as to permit summary judgment even in the face of an acknowledged dispute of material fact. IMMDF has not been able to identify any authority in either the UFMJRA cases or the cases involving waiver of a right to arbitrate to support such a standard. Indeed, the cases on which the district court relied for its findings do not recognize any such broad discretion and are either silent as to burden of proof on the issue or place that burden on the party seeking to avoid recognition. *Dart*, 953 S.W.2d at 480 (party seeking to avoid recognition has the burden of proving a ground for nonrecognition; unless the judgment debtor satisfies that burden of proof by establishing one or more of the specific grounds for nonrecognition, the court *is required* to recognize the foreign country judgment); *Courage*, 93 S.W.3d at 331 (same); *Montebueno I* (silent as to burden of proof in proceedings regarding

39

recognition of a judgment under California's equivalent of UFMJRA § 10-701(b)(4)); *Montebueno II* (same); *Tyco* (same).

IMMDF is cognizant that, in light of the federal policy in favor of arbitration, findings of waiver are disfavored and that the party seeking a finding of waiver of the right to arbitrate bears a "heavy burden," as noted by the district court. Appx. 323, n. 7 (citing *Liberty Mut. Grp., Inc. v. Wright*, No. CIV.A. DKC 12-0282, 2012 WL 1446487, at *3 (D. Md. Apr. 25, 2012)). That does not, however, prevent a finding of waiver where a party's participation in litigation is inconsistent with any intent to insist upon enforcing arbitration. *RTKL Associates, Inc. v. Four Villages Ltd. P'ship*, 95 Md. App. 135, 620 A.2d 351 (1993) (defendants waived their right to arbitration by actively participating in litigation). Indeed, there is ample authority for the proposition that a waiver of a right to arbitrate contained in a written agreement may be implied based on a party litigating a dispute notwithstanding their right to insist upon arbitration. *Id.; see also Abramson v. Wildman*, 184 Md. App. 189, 202, 964 A.2d 703, 710 (2009) (accord); *The Redemptorists v. Coulthard Servs., Inc.*, 145 Md. App. 116, 137, 801 A.2d 1104, 1116 (2002) ("[O]ne who litigates an issue that otherwise would be subject to arbitration waives his right subsequently to arbitrate that issue.").

A party waives his right to arbitrate where he "so substantially utiliz[es] the litigation machinery that to subsequently permit arbitration would prejudice the

party opposing the stay. *Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985). To waive arbitration as a result of participating in litigation, "a party must (1) know of an existing right to arbitration, (2) act inconsistently with that right, and (3) cause prejudice to the opposing party through these inconsistent acts. *Liberty Mut. Grp., Inc.*, 2012 WL 1446487, at *3. There can be little doubt that all three prongs are satisfied in the case at bar.

Here, Harmoosh obviously knew of his right to arbitrate the case because he had previously obtained a dismissal of the First Maryland Action on the basis of the arbitration clause. He acted inconsistently with a desire to enforce that right when he litigated his case through judgment before the Iraq Court of First Instance, raising numerous other factual and jurisdictional defenses, but not raising arbitration as a defense before the trial court. "In general a party waives arbitration by seeking a decision on the merits before attempting to arbitrate." *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 852 (D. Md. 2013) (internal citations and quotations omitted).

Finally, the prejudice to IMMDF is substantial where it litigated the Iraqi case to judgment, successfully obtained that judgment, disclosing its legal theories and evidence in the process, and only then did Harmoosh attempt to enforce his right to arbitrate. Indeed, it is apparent that Harmoosh, having taken his chances litigating before the Iraqi trial court, only sought to enforce the arbitration clause

after he lost that calculated gamble. This is the sort of prejudice the waiver principal is intended to prevent.

## **CONCLUSION**

Accordingly, despite the "heavy burden" that exists on a party seeking a finding that another party has waived the right to enforce arbitration, IMMDF has met that burden here where it has offered abundant admissible evidence that the issue was not raised before the Iraqi Court of First Instance as required under Iraqi law, and Defendants have offered nothing definitive or substantive to refute that fact. Neither the Putative Affidavit nor the Iraqi Appellate Brief offered as evidence by Defendants actually sheds light on the sharp issue here. Defendants have not offered one shred of evidence to support the conclusory statements of its counsel that the issue was raised before the Iraqi trial court. At best, Defendants' evidence demonstrates a disputed material fact that would preclude judgment at this stage. When one looks beyond the smoke and mirrors of Defendants' purported evidence on this issue, there is nothing substantive there that would refute IMMDF's evidence. Based on this evidence, it is undisputed (i) that the case in Iraq was litigated through the final appeal stage, (ii) that the law in Iraq provides that a party must raise the existence of an arbitration clause at the initial hearing, and (iii) Harmoosh failed to raise the arbitration clause at the initial hearing, but only raised it for the first time on appeal. Appx. 216-74, 286-88. If this evidence

supports any conclusion as a matter of law, it is that IMMDF is entitled to a finding of waiver.

Accordingly, for all the reasons set forth herein, Appellant requests that this Court reverse the Order dismissing Count I and granting Defendants' motion to compel arbitration, and remand the matter to the district court, for further discovery and trial on the merits.

## REQUEST FOR ORAL ARGUMENT

Appellant Iraq Middle Market Development Foundation hereby requests that the Court set this matter for oral argument.

Respectfully submitted,


/s/ D. Michelle Douglas
Haig V. Kalbian
D. Michelle Douglas
KALBIAN & HAGERTY, LLP
888 17th Street, NW, Suite 1000
Washington, DC  20006
(202) 223-5600

*Counsel for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*10,496*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>May 23, 2016</u>                    <u>/s/ D. Michelle Douglas</u>
                                                        *Counsel for Appellant*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 23rd day of May, 2016, I caused this Brief of Appellant and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Mukti N. Patel
> FISHER BROYLES, LLP
> 100 Overlook Center, 2nd Floor
> Princeton, New Jersey  08540
> (609) 436-9898
>
> *Counsel for Appellees*

I further certify that on this 23rd day of May, 2016, I caused the required copies of the Brief of Appellant and Joint Appendix to be hand filed with the Clerk of the Court.

/s/ D. Michelle Douglas
*Counsel for Appellant*
