RECORD NO. 16-1403

In The

# United States Court of Appeals
## For The Fourth Circuit

**IRAQ MIDDLE MARKET DEVELOPMENT FOUNDATION,**

*Plaintiff – Appellant,*

**v.**

**MOHAMMAD ALI MOHAMMAD HARMOOSH,**
**a/k/a Mohammed Alharmoosh; JAWAD ALHARMOOSH,**

*Defendants – Appellees.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND AT BALTIMORE**

———————

**REPLY BRIEF OF APPELLANT**

———————

Haig V. Kalbian
D. Michelle Douglas
KALBIAN HAGERTY, LLP
888 17th Street, NW, Suite 1000
Washington, DC  20006
(202) 223-5600

*Counsel for Appellant*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ............................................................................. 1

ARGUMENT ..................................................................................... 3

    I.    Appellees Have Misstated and Mischaracterized the Facts ................. 3

    II.   Appellees' Ostensible Explanation for the District Court's Shifting Burden of Proof Is Unsupported and Unsupportable ............. 6

    III.   The District Court's Procedural Errors Have Denied IMMDF Its Day in Court ................................................................................ 10

    IV.   Appellees' Claim that Waiver Is Irrelevant to Discretionary Nonrecognition Is Contradicted by the *Montebueno* Case and Other Authority on which Appellees Purport to Rely ....................... 16

    V.   Appellees' Reliance on the *MicroStrategy* Case Is Misplaced .......... 19

CONCLUSION .................................................................................. 21

ADDENDUM A

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Baker v. Booz Allen Hamilton, Inc.*,
    358 F. App'x 476 (4th Cir. 2009) ................................................................... 7

*Empire World Co. v. Kazeerom Co.*,
    Decision No. 117/T/2015 of the Court of Cassation
    for the Irbil Region (Iraq) dated May 6, 2015 ...................................... 3, 9, 21

*Evans v. Techs. Applications & Serv. Co.*,
    80 F.3d 954 (4th Cir. 1996) ....................................................................... 12

*Gay v. Wall*,
    761 F.2d 175 (4th Cir. 1985) ...................................................................... 11

*Harrods Ltd. v. Sixty Internet Domain Names*,
    302 F.3d 214 (4th Cir. 2002) ................................................................. 12, 13

*Maxum Foundations, Inc. v. Salus Corp.*,
    779 F.2d 974 (4th Cir. 1985) ...................................................................... 10

*MicroStrategy, Inc. v. Lauricia*,
    268 F.3d 244 (4th Cir. 2001) ................................................................. 19, 20

*Montebueno Mktg. v. Del Monte Foods Corporation – USA*,
    No. CV 11-4977 MEJ, 2012 WL 986607 (N.D. Cal. Mar. 22, 2012),
    *aff'd sub nom.*, 570 F. App'x 675 (9th Cir. 2014) ................................. 16, 17

*Montebueno Marketing, Inc. v. Del Monte Corporation-USA*,
    570 F. App'x 675 (9th Cir. 2014) .......................................................... 17, 18

*Nguyen v. CNA Corp.*,
    44 F.3d 234 (4th Cir. 1995) ....................................................................... 12

*The Courage Co. v. The Chemshare Corp.*,
    93 S.W.3d 323 (Tex. Ct. App. 2002)............................................8, 17, 18, 19

*Tyco Valves & Controls Distrib. GmbH v. Tippins, Inc.*,
    No. 04-1626, 2006 WL 2924814 (W.D. Pa. Oct. 10, 2006) ..................17, 18

## STATUTES

Article 253 of Iraq's Amended Civil Proc. Code No. 83 of 1969 ...............2, 3, 9, 21

UFMJRA .........................................................................................*passim*

## RULES

Fed. R. App. P. 32.1(b) .....................................................................................3

Fed. R. Civ. P. 12 ......................................................................................11, 13

Fed. R. Civ. P. 56 ............................................................................*passim*

Fed. R. Civ. P. 56(d) .................................................................................12, 13

## OTHER AUTHORITY

THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION
(Columbia Law Review Ass'n et al., eds. 19th ed. 2010) .......................................3

iii

## INTRODUCTION

Plaintiff-Appellant Iraq Middle Market Development Foundation ("IMMDF" or "Appellant") respectfully submits this Reply Brief to address the arguments submitted in the Brief of Defendants-Appellees Mohammad Ali Mohammad Harmoosh a/k/a Mohammed Alharmoosh ("Harmoosh") and Jawad Alharmoosh (collectively, the "Appellees").[1]

Appellees' answering brief ("Harmoosh Brief"; Dkt. 14) boils down to three contentions, one wholly unsupported by any citation to law, one explicitly contrary to the case ostensibly relied on, and one which requires a blatant mischaracterization of Appellees' evidence. Specifically, Appellees argue that it was appropriate for the district court to place the burden of proof on Harmoosh when considering the mandatory non-recognition grounds under the Maryland Uniform Foreign Money-Judgments Recognition Act ("UFMJRA"), but to shift that burden of proof to IMMDF when considering the discretionary grounds, based entirely on the source of the law relied on. However, absolutely no authority is cited for such a novel proposition because none exists. The case law clearly demonstrates that the burden of proof squarely falls on Harmoosh when considering both, the mandatory and discretionary non-recognition grounds under UFMJRA.

---

[1]  These and all other defined terms from IMMDF's Brief will be used identically here unless otherwise noted.

Next, Appellees contend that the issue of waiver of arbitration rights is "never reached" in a court's analysis of the discretionary grounds under UFMJRA. This contention directly contradicts the case law referenced by Appellees in this context, and indeed is contrary to all of the cases cited by the parties and the district court in which a potential waiver of arbitration right has been alleged.

Additionally, throughout their brief, Appellees continue the blithe misrepresentation of the evidence that they used before the district court. Specifically, Appellees ignore IMMDF's detailed analysis of all the evidence and simply respond with conclusory statements that Harmoosh raised the arbitration defense "in writing" to the Court of First Instance in Iraq (the "Iraqi Trial Court"), despite the fact that no such writing has been offered as evidence and the document purporting to be such a writing is, on its face, obviously a document submitted to an appellate court rather than a pleading submitted to the Iraqi Trial Court. Moreover, Appellees' silence as to *when* Harmoosh supposedly raised the arbitration defense to the Iraqi Trial Court, in writing or otherwise, speaks volumes. As established in the record before the district court, Iraqi civil procedure requires that a party must raise an arbitration defense during the first hearing,[2] but

---

[2]     Article 253 of Iraq's Amended Civil Procedure Code No. 83 of 1969 ("Article 253") reads, in pertinent part, "However, if one of the parties resorts to the court in violation of the arbitration agreement and the other party does not object to that, then the suit may be heard and the arbitration clause shall be deemed as null and void." APP-243.  Although the "first hearing" requirement does not appear in the

2

the evidence here is clear that Harmoosh not only failed to raise the arbitration defense during the first hearing, but at any stage before judgment was entered by the Iraqi Trial Court.

## ARGUMENT

### I.    Appellees Have Misstated and Mischaracterized the Facts.

The facts in this matter were set out in detail in IMMDF's Brief and will not be reiterated here. However, the Harmoosh Brief contains numerous misstatements and mischaracterizations of those facts that must be addressed.

First, Appellees' statement that IMMDF's filing of its case in Iraq was "in contravention of … a District Court ruling" (Harmoosh Brief at 6) is patently false. As the district court noted in its Order, Judge Blake did not compel arbitration, but only dismissed the First Maryland Action. (APP-322, n.6).

---

text of Article 253, this is how the procedural rule is consistently applied, as explained by IMMDF's Iraqi counsel in his submission to the district court (APP-218) and as evidenced by Iraqi case law. *See*, Decision No. 117/T/2015 of the Court of Cassation for the Irbil Region (Iraq) dated May 6, 2015 in the appeal of Empire World Co. against Kazeerom Co. ("*Empire* Decision"), reversing a lower court decision to postpone or stay a case in favor of arbitration because "**Defendant did not object to this in the first session** … and the request to postpone the suit came after several litigation sessions, **and thus the suit was allowed to be heard and the conditions of arbitration considered null as per section 3 of Article 253 of the Civil Litigation Law** …" (emphasis added). A copy of the decision and a certified translation thereof is attached as Addendum A hereto, pursuant to Federal Rule of Appellate Procedure 32.1(b) The Court of Cassation is the highest court of ordinary jurisdiction in Iraq. THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION (Columbia Law Review Ass'n et al., eds. 19th ed. 2010) at 341.

Appellees' discussion of IMMDF's reasoning for proceeding with litigation in Iraq is an extended *ad hominem* attack, rife with speculation, but devoid of citation to any relevant facts. This extended and completely irrelevant discussion is transparently intended to distract from the paucity of a substantive discussion about the facts that are actually relevant, namely the proceedings that were held in Iraq. On the most crucial issue – exactly when Harmoosh claims he raised the arbitration defense before the Iraqi Trial Court – Appellees' silence is deafening.

Instead, Appellees continue to insist in conclusory fashion that "evidence" shows that "Harmoosh raised the arbitration provision as a defense before the trial and appellate courts in Iraq" and that the arbitration defense was raised "in writing to the [Iraqi] trial court." Harmoosh Brief at 8 (citing APP-280, 286-288). The purported "evidence" cited here consists of nothing more than (i) Appellees' reply in relation to the Motion, which makes these same fanciful characterizations of the evidence, but which is not, in itself, evidence (APP-280); (ii) the Iraqi Appellate Brief, which that same reply described as a "pleading" filed with the Iraqi Trial Court, but which, in fact, is obviously an appellate brief (as is demonstrated by, *inter alia*, reference to a judgment having already been issued) (APP-287-88); and (iii) the Putative Affidavit (APP-286) which, even if it were a valid affidavit, fails to evidence anything of the kind. Even in this statement – to which Harmoosh's attorney Mr. Al-Waeli is <u>unwilling to attest under oath</u> – (i) he does not state that

4

he raised the issue in writing; (ii) he does not produce, attach or in any other way reference any such writing; (iii) he does not even state specifically that he raised the issue with the Iraqi Trial Court at any time, but only states generally that he objected at some unspecified point to some unspecified court in some unspecified manner; and (iv) he states that "the court did not consider the defense in both the instance and appeal stages," a statement that would be true even if Harmoosh had never raised the defense.[3]

Looking at the actual evidence Appellees have submitted, rather than their attorneys' mischaracterizations of that evidence, it appears to agree with IMMDF's evidence on this issue. Most notably, the Iraqi Appellate Brief evidences that Harmoosh did not raise the arbitration defense before the Iraqi Trial Court, but appears to raise it for the first time in Iraqi appellate proceedings (i.e., it does not refer to Harmoosh having objected before the Iraqi Trial Court and having that objection overruled, but merely argues it as a new issue). APP-287.

Finally, the statement in the Harmoosh Brief that IMMDF "somehow obtained" a judgment in Iraq (Harmoosh Brief at 13) cannot go unanswered. There is no mystery as to how IMMDF obtained the judgement. IMMDF obtained it after

---

[3]    By the Court's acceptance of Mr. Al-Waeli's Affidavit, without requiring even production of the original Arabic version, it denied IMMDF any opportunity to challenge the translation of his statements, much less take his deposition to question and challenge the allegations made. As discussed in the IMMDF Brief, the Putative Affidavit appears calculated to evade and mislead. IMMDF Brief at 29-30.

litigating the case on the merits before the Court of First Instance in Iraq. This court is a specialized commercial court created by Iraq with the help of the U.S. government to ensure that commercial disputes could be promptly and judiciously heard. APP-161-62. It was part of the same broad effort by the U.S. government to strengthen and legitimize Iraq's economy and business culture after the fall of the Saddam Hussein regime. It is under this umbrella that IMMDF was authorized to loan U.S. funds to individuals such as Harmoosh in order to grow and develop mid-size businesses in Iraq.

The Harmoosh Brief repeats Appellees' feeble attempt to shroud their meritless position with some semblance of reasonableness. There can be no other explanation for the shocking lack of specifics about relevant facts, even in direct response to IMMDF's Brief outlining their failure to date to provide such specifics. Appellees' actions only amplify the obvious – if one looks at specifics – Appellees will lose.

## II.    Appellees' Ostensible Explanation for the District Court's Shifting Burden of Proof Is Unsupported and Unsupportable.

IMMDF's Brief argues that the district court erred when it found that a genuine dispute of material fact exists as to whether Harmoosh raised the arbitration defense before the Iraqi Trial Court, but nevertheless granted summary judgment and compelled arbitration, especially in the face of IMMDF's explicit request for discovery. The Harmoosh Brief does not even scratch the surface of

6

this issue by merely reiterating the standard of review for summary judgment and stating in conclusory fashion that the district court correctly applied this standard. Harmoosh Brief at 22.

Nor have Appellees offered any valid grounds for the district court's apparent shifting of the burden of proof from Harmoosh to IMMDF, without explanation or discussion, when considering the mandatory and discretionary bases for nonrecognition of a foreign judgment under the UFMJRA. Instead, Appellees conjure up an argument that when the district court was considering matters arising under Iraqi law, it was appropriate to place the burden of proof on Harmoosh, but when the court was applying U.S. law, the burden of proof shifted to IMMDF. Appellees make no effort to support this bizarre contention with any citation to authority. This would appear to represent a misapplication of the basic principle that one who seeks to apply foreign law bears the burden of proving the *contents* of that law. *See, e.g.*, *Baker v. Booz Allen Hamilton, Inc*., 358 F. App'x-476, 481 (4th Cir. 2009). There is no authority known to the undersigned that supports Appellees' claim that the burden of proving the underlying facts shifts in any way based on whether one is applying foreign versus domestic law.

In the end, Appellees offer no more clarity as to where the burden of proof should properly lie than is found in the district court's Order. As such, the best authority we have for where the burden lies when applying the UFMJRA is that

stated in the *Courage* case, which, as noted in IMMDF's Brief, is the most detailed and well-reasoned of all the discretionary non-recognition cases. *The Courage Co. v. The Chemshare Corp.*, 93 S.W.3d 323 (Tex. Ct. App. 2002). In *Courage*, the Texas Court of Appeals makes clear that the burden of proof is on the defendant to establish grounds for nonrecognition, with no discussion of that burden shifting at any point in the analysis. *Courage*, 93 S.W.3d at 331.

All facts on summary judgment must be construed in favor of the non-moving party. Far from assessing the evidence in the light most favorable to IMMDF, the district court (i) was dismissive of hearing summaries issued by the Iraqi Trial Court (finding that these summaries may not list all issues raised), and (ii) completely ignored the statements under oath by IMMDF's Iraqi attorney that the arbitration defense was never raised by Harmoosh at any of the hearings before the Iraqi Trial Court, much less at the first hearing, as required by Iraqi law. The district court weighed that evidence against the unsworn, translated statement of Harmoosh's counsel that "the trial court did not consider" the arbitration defense and "the issue was raised before the court" (without specifying whether "the court" in this sentence refers to the Iraqi Trial Court or the Iraqi court of appeals, though that crucial distinction is the difference between waiver and non-waiver) and concluded that IMMDF had not established that Harmoosh waived his right to arbitration. Although a judge's findings of fact are entitled to deference, on the

evidence before the district court, it was an abuse of discretion to conclude that IMMDF had failed to establish a waiver of arbitration rights, especially where that evidence should have been weighed in favor of IMMDF at the summary judgment stage.

Indeed, the district court's final conclusion as to the discretionary bases warrants closer examination: "Despite the parties' competing affidavits, there is no evidence demonstrating that the <u>Iraqi courts</u> found that Harmoosh waived the arbitration provision and deemed the provision null and void pursuant to Article 253." APP-323 (emphasis in original). Harmoosh clearly did waive his right to arbitration under Iraqi law, by failing to raise it in the first hearing as required by Article 253. APP-218, 243; *see also*, *Empire* Decision. However, there is nothing in U.S. law on waiver of arbitration that requires IMMDF to demonstrate that the <u>Iraqi court</u> made any such finding. If Harmoosh never raised the arbitration defense at any stage of the Iraqi proceedings, the waiver would still have occurred for purposes of the current proceedings. The waiver is clear here because: (i) Harmoosh had a bona fide opportunity to raise an arbitration defense in Iraq, and he failed to do so prior to issuance of the Iraqi Judgment; (ii) the arbitration defense was actually litigated (unsuccessfully) by Harmoosh in Iraq during the appellate stage, as evidenced by the Iraqi Appellate Brief; and (iii) because Harmoosh, by litigating his dispute with IMMDF in Iraq through the judgment

phase and through two levels of appeal "so substantially utiliz[ed] the litigation machinery that to subsequently permit arbitration would prejudice the [other] party." *Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985).[4]

Because the court concluded that disputed material facts exist as to whether Harmoosh raised the arbitration defense in Iraq, and there is no apparent reason to apply a different standard of review or burden of proof as to the discretionary bases for non-recognition under UFMJRA as applies under the mandatory provisions, the district court's grant of summary judgment was improper and must be set aside.

## III. The District Court's Procedural Errors Have Denied IMMDF Its Day in Court.

In its Brief, IMMDF argued that the district court's conversion of the motion to dismiss into a motion for summary judgment, without notice (except within the order granting the motion), was an error. IMMDF also argued that the district court erred when it considered inadmissible evidence – namely a vague and unsworn translated statement without the original Arabic version being provided and with no translator's certification – over IMMDF's objections and without requiring

---

[4]   The Harmoosh Brief again is almost entirely silent on the prejudice issue, merely pretending that the issue was not discussed by IMMDF. Harmoosh Brief at 30 ("Even if IMMDF were to argue prejudice…"). Instead, Appellees' fail to respond either to the substantive discussion in IMMDF's Brief or to the very real and obvious prejudice to a party who has spent time and money litigating a case on the merits through judgment before the judgment debtor, having lost his gamble, belatedly seeks to enforce arbitration. IMMDF Brief at 40-41.

Appellees to take even minimal steps to establish that the evidence could indeed be made admissible. While each of these errors, on its own, might be harmless, combined they create a fundamental denial of due process. That stark reality is made worse by the district court's failure to weigh the evidence with reasonable inferences in IMMDF's favor, as required in a motion for summary judgment.

Appellees attempt to dismiss IMMDF's objections, but the cited cases are unavailing. First, Appellees cite *Gay v. Wall* for the proposition that one who is aware that materials outside the pleadings might have been submitted on a motion to dismiss, is on notice of the possibility of conversion. Harmoosh Brief at 16, citing *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). That possibility of conversion is why IMMDF explicitly requested in its Opposition to the Motion to Dismiss that the district court, if it was inclined to convert the motion, give notice of that intent as required by Rule 12, and allow further discovery, as required by Rule 56. APP-169-170. IMMDF does not deny that it was on notice of the *possibility* of conversion – it would not have made that request otherwise – but IMMDF should be entitled to rely on the district court following the Federal Rules of Civil Procedure and allowing IMMDF at least limited discovery before ruling on a motion to dismiss that exceeds the four corners of the Complaint and requires the court to reach findings on fact-intensive inquiries.

With regard to the district court's denial of IMMDF's request for further discovery, Appellees point to the *Evans* case for the proposition that a general statement in opposition to a motion for summary judgment that more discovery is needed is insufficient where no Rule 56(d) affidavit was submitted. Harmoosh Brief at 18 (citing *Nguyen v. CNA Corp.*, 44 F.3d 234 (4th Cir. 1995); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954 (4th Cir. 1996)). Appellees miss the point entirely. In both of those cases, the plaintiff was responding to motions explicitly requesting summary judgment, and thereby triggering all obligations set forth in Rule 56, which is a far cry from the posture of the instant case.

IMMDF in its Brief cited the *Harrods* case for the proposition that, where the court is on notice that a party has not had a reasonable opportunity to obtain discovery through no fault of its own, and where the party has requested additional discovery from the court, such requests may be sufficient to make summary judgment improper because such notice serves as the functional equivalent of a Rule 56(d) affidavit. *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214 (4th Cir. 2002). In response, Appellees mischaracterize the *Harrods* decision by arguing that "In Harrods, the party arguing that additional discovery was needed, while failing to submit a Rule 56(d) affidavit, had outlined in its brief and at oral argument the *specific additional discovery it required*." Harmoosh Brief at 20 (emphasis added; citing *Harrods*, 302 F.3d at 244-246). This is simply untrue. The

12

*Harrods* decision nowhere says that the plaintiff provided any more detailed information on what discovery is needed than IMMDF offered here. *Harrods*, 302 F.3d at 244-246. Instead, the decision notes multiple times in that party's pleadings and at oral argument at which the court was reminded that almost no discovery had been conducted and that plaintiff generally needed to conduct additional discovery. *Id.* Despite this notice, the district court in *Harrods* determined that no additional facts needed to be explored as to six of the domain names at issue and granted summary judgment as to those names. *Id.* On appeal, this court concluded that, where the motion for summary judgment was filed only six weeks after an amended complaint was filed, and the court was well aware that the motion was "prior to almost any discovery," all of these factors combined satisfied the purpose of a Rule 56 affidavit and denial of that discovery was improper even though the plaintiff had failed to file such an affidavit.

The reasons for finding IMMDF's notice to the court to be the "functional equivalent" of a Rule 56(d) affidavit is even stronger than in the *Harrods* case. Here, plaintiff was not responding to a Rule 56 motion, but to a Rule 12 motion to dismiss, such that demanding literal compliance with all aspects of Rule 56 is unreasonable. Indeed, Appellees make no effort to cite a case in which such literal compliance with Rule 56 is demanded, despite the fact that Rule 56 had not yet been triggered or referenced by any party. This is rather akin to arguing that a

motion to dismiss, upon conversion to a motion for summary judgment, could be properly granted merely because the party opposing had failed to file a Rule 56 statement of facts in dispute. While IMMDF has never denied it was on notice of the *possibility* that the motion would be converted, it explicitly requested formal notice of such a conversion so that it could ensure complete compliance with Rule 56 in that event. APP-169-170. The district court erred by not following the appropriate procedure.

Finally, in response to IMMDF's position that the Court improperly considered the Putative Affidavit and the Iraqi Appellate Brief – and adopted Appellees' contentions as to what inferences should be drawn from those documents in preference to IMMDF's controverting admissible evidence – Appellees cite numerous cases regarding what an "affidavit" must contain for its *contents* to be properly considered on a motion for summary judgment. Harmoosh Brief at 18. However, the Putative Affidavit is not an "affidavit" at all. IMMDF's objection to the Putative Affidavit is not that the document itself would not be admissible at trial – that objection would be true of all affidavits submitted on summary judgment which are hearsay and therefore not, in themselves, admissible at trial by the party offering them. Instead, IMMDF is objecting to this document because an unsworn statement of an unidentified translator who fails to provide the original document translated is not merely unsound evidence, but no evidence at all

14

in the summary judgment context. Even if properly submitted with a certified translation, the Putative Affidavit is of no evidentiary value because it is unsworn. Instead, Appellees' witness, who had a clear opportunity to put in a sworn statement, has apparently declined to do so, and there is no basis for Appellees' or the district court's assumption that this purported evidence could be made admissible.[5] If one could *prevail* on summary judgment and obtain *dismissal* of a case by attaching such "evidence" in a *reply* brief, there would be nothing to stop every defendant from submitting entirely fictional "statements" to a court, knowing that neither the validity nor contents of the document could be challenged by the plaintiff.

Rule 56 requires that a party seeking or defending against the motion support its factual contentions with some evidence, but here Appellees effectively failed to do so. More importantly, the district court's consideration and adoption of this evidence, combined with the district court's failure to allow discovery relating to the facts supposedly underlying it, has robbed IMMDF of any meaningful opportunity to challenge Appellees' purported evidence.

---

[5]  Notably, despite this being raised by IMMDF in its Sur-Reply to the Motion (APP-300-301), Appellees made no effort to supplement the record or offer an admissible version of the statement, a translator's certificate, or any other evidence that would tend to show that this was reliable evidence.

IV.  **Appellees' Claim that Waiver Is Irrelevant to Discretionary Nonrecognition Is Contradicted by the *Montebueno* Case and Other Authority on which Appellees Purport to Rely.**

In its Brief, IMMDF argued at length with regard to the *Montebueno* case and other discretionary nonrecognition cases relied upon by the district court in its Order, noting that although those cases in which waiver was actually argued did not find a waiver had occurred. The reasoning applied in all of these cases makes clear that a waiver of arbitration rights would defeat the contention that a foreign judgment was in violation of an arbitration clause.

Appellees respond to none of that. Instead, Appellees offer a nonsensical theory that the waiver issue is never reached when a court is considering the discretionary grounds for nonrecognition under the UFMJRA. Significantly, this contention is not even supported by the Order, which Appellees misrepresent when they claim that "the District Court did not reach the question of waiver of the right of arbitration under the discretionary ground." Harmoosh Brief at 28. In fact, the district court clearly did consider the waiver issue relevant to the discretionary nonrecognition grounds because it included a footnote explaining why it was rejecting IMMDF's position in that regard. APP-328, at n.11.

Again, Appellees fail to support their novel theory with any citation to authority, though Appellees attempt to mislead this Court into thinking such support exists by citing three cases in support of the much more general

proposition that under the UFMJRA, a court may decline to recognize a judgment obtained in contravention to an agreement to arbitrate. Harmoosh Brief at 25, (citing *Montebueno Mktg. v. Del Monte Foods Corporation – USA*, No. CV 11-4977 MEJ, 2012 WL 986607, at \*2 (N.D. Cal. Mar. 22, 2012), *aff'd sub nom.*, 570 F. App'x 675 (9th Cir. 2014); *Tyco Valves & Controls Distrib. GmbH v. Tippins, Inc.*, No. 04-1626, 2006 WL 2924814, at \*7 (W.D. Pa. Oct. 10, 2006); *The Courage Co. v. The Chemshare Corp.*, 93 S.W.3d 323, 338 (Tex. Ct. App. 2002)).

Appellees are being disingenuous in arguing that *Montebueno* – or any of the other cases cited – supports their broader proposition that the issue of waiver is irrelevant when applying the UFMJRA's discretionary bases for nonrecognition. Notably, Appellees only cite to the trial court's opinion in *Montebueno*, referred to in IMMDF's Brief as *Montebueno I*, rather than the Ninth Circuit's opinion affirming the trial court, referred to as *Montebueno II*. *See Montebueno Marketing, Inc. v. Del Monte Corporation-USA*, 570 F. App'x 675 (9th Cir. 2014). Their reasons for doing so are obvious, in that waiver was never argued by Montebueno (the party seeking to enforce a foreign judgment) in the trial court proceedings and thus the issue is not addressed at all in the trial court's ruling. *See generally Montebueno I.* However, as discussed at length in IMMDF's Brief, the Ninth Circuit's opinion, as well as Montebueno's brief submitted to that court, makes clear that the issue was raised only on appeal and was not supported by evidence

17

presented to the trial court. *See* IMMDF's Brief at 34-35 (citing *Montebueno* II at 677); *see also* Appellant's Opening Brief, *Montebueno Marketing, Inc. v. Del Monte Corporation-USA*, No. 12-15958 (9th Cir. July 30, 2012), 2012 WL 3164191 at *4-6 (2014). Based on the Ninth Circuit's discussion of waiver in *Montebueno II*, it is apparent that this could potentially have been a successful argument if Montebueno had properly raised it and supported it with evidence before the trial court. *Montebueno II* at 677.

Despite Appellees' citation of the *Tyco* and *Courage* cases, the Harmoosh Brief is entirely silent as to these cases, which also fail to support Appellees' assertion that waiver is not relevant in the context of discretionary nonrecognition. As noted in IMMDF's Brief at 36-37, the *Tyco* decision does not discuss waiver because it was not raised by the party seeking to enforce a foreign judgment – and indeed would have been rejected if raised because the arbitration defense there was raised at the outset of the foreign litigation. *Tyco Valves & Controls Distrib. GmbH v. Tippins, Inc.*, No. 04-1626, 2006 WL 2924814, at *7 (W.D. Pa. Oct. 10, 2006).

The *Courage* case is even further from supporting Appellees' contention because the court there conducts a full waiver analysis. *Courage*, 93 S.W.3d at 336-38. Although waiver was rejected in *Courage*, the decision makes clear that, if proven, waiver would defeat the contention that a court should decline recognition

of a foreign judgment that was issued notwithstanding an arbitration clause in the parties' agreement. *Id.* at 331.

Appellees' efforts to argue that waiver is irrelevant are necessitated because they submitted no real evidence before the district court to refute the waiver argument. Indeed, in the Harmoosh Brief, Appellees make no effort to respond to or refute IMMDF's detailed analysis of the Iraqi Appellate Brief and the Putative Affidavit. Instead, as argued in Section I above, Appellees continue to rely on the same inaccurate and conclusory statements they used to describe these documents to the district court and contending inaccurately that the Iraqi *Appellate* Brief demonstrates the issue was raised "in writing" before the Iraqi Trial Court. Harmoosh Brief at 8.

## V. Appellees' Reliance on the *MicroStrategy* Case Is Misplaced.

Once again, Appellees' failure to notice or acknowledge details has led them to rely heavily on a case that does not aid their cause. Their heavy reliance on the *MicroStrategy* case is misplaced because the details of the case reflect that the rejection of waiver there was based on facts far from present in the case at bar. *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244 (4th Cir. 2001). In that case, MicroStrategy's employee Lauricia initiated administrative complaints against the company; while those complaints were pending, the company initiated three separate lawsuits against her, all of which "were primarily directed to claims

19

unrelated to those asserted by Lauricia," including allegations that Lauricia had removed confidential documents when she was terminated. *Id.* at 247, 251. After Lauricia obtained her "right to sue" letter, and proceeded to litigation, the company within one month moved to dismiss and enforce the arbitration clause from the employee handbook. *Id.* at 250. After Lauricia successfully convinced the district court not to compel arbitration because MicroStrategy had waived its right to arbitrate by its previous litigation activities, MicroStrategy appealed and the Fourth Circuit agreed that, because the company's litigation was primarily focused on claims unrelated to Lauricia's employment claims, "the expense and effort associated with those claims cannot be used in support of the argument that MicroStrategy waived its right to arbitrate the discrimination claims." *Id.* at 251. In reaching this conclusion, this Court stressed that waiver may be found only where the litigation activities have caused the party resisting arbitration actual prejudice. *Id.* Because MicroStrategy had only delayed for one month after Lauricia brought her employment lawsuit before seeking to enforce arbitration, and because the only prejudice alleged resulting from the prior litigation was that Lauricia had responded to discovery which MicroStrategy likely would have been permitted to take during the arbitration proceedings, she had failed to establish prejudice sufficient to find a waiver. *Id.* at 254.

Obviously, the facts in the present case are vastly different. The prior litigation activities were not "unrelated" to arbitrable claims, but were exactly the same claims. Similarly, where MicroStrategy sought arbitration just one month into the employment litigation case, Harmoosh failed to raise the issue at any time prior to issuance of judgment, and certainly not at the first hearing, as required by Article 253. APP-218, 243; *see also*, *Empire* Decision. IMMDF will suffer grave prejudice if it is made to relitigate its claims. Perhaps more importantly, failure to find a waiver in these circumstances would be an invitation to parties like Harmoosh to "game" the system by taking their chances in litigation with the knowledge that they can later cry "arbitration" if they are unhappy with the result of their gamble.

## CONCLUSION

Accordingly, for all the reasons set forth herein and in IMMDF's Brief, Appellant requests that this Court reverse the Order dismissing Count I and granting Defendants' motion to compel arbitration, and remand the matter to the district court, for further discovery and trial on the merits.

Respectfully submitted,


/s/ D. Michelle Douglas
Haig V. Kalbian
D. Michelle Douglas
KALBIAN HAGERTY LLP
888 17th Street, NW, Suite 1000
Washington, DC  20006
(202) 223-5600

*Counsel for Appellant*

# ADDENDUM A

بسم الله الرحمن الرحيم



**اقليم كردستان العراق**

مجلس القضاء

رئاسة محكمة استئناف

منطقة أربيل

**هەرێمی کوردستانی عێراق**

ئه‌نجومه‌نی دادوه‌ری

سه‌رۆکایه‌تی دادگای تی هه‌نجوونه‌وه‌ی

ناوچه‌ی هه‌ولێر

العــدد /١١٧/ ت، /٢٠١٥/

التاريخ /٦ /٥ /٢٠١٥ م

تشـكلت محكمة اسـتئناف منطقة أربيـل بـصفتها التمييزيـة بـتاريخ ٢٠١٥/٥/٦ بـرئاسـة الرئيـس السيد شاكر شريف حسين وعضوية نائب الرئيس السيد سامح عثمان يونس والقاضي السيد محمد مصطفى محمود المأذونين بالقضاء بأسم الشعب واصدرت القرار الآتي :

المميز (المدعي) / المدير المفوض لشركة إمباير ورلد/اضافة لوظيفته _ وكيلتها المحامية ئاڤان محسن رشيد .
المميز ضده (المدعى عليه ) / المدير المفوض لشركة كازيرزم اضافة لوظيفته _ وكيله المحامي سرمد حاجي .

قررت محكمة بداءة اربيل في الجلسة المؤرخة ٢٠١٥/٤/١٢ وفي الدعوى البدائية المرقمة ٤٨٤/ب٢٠١٥/ استئخار الدعوى بحجة وجود شرط التحكيم في العقد المبرم بين الطرفين استناداً الى الفقرة (٣) من المادة (٢٥٣) من قانون المرافعات المدنية . ولعدم قناعة المميز /المدعي/ بالقرار بادر وكيلته الى الطعن فيه تمييزاً طالباً نقضه للاسباب الواردة في لائحتها التمييزية المدفوع عنها الرسم بتاريخ ٢٠١٥/٤/١٩ عليه وضعت الاضبارة قيد التدقيق والمداولة :-

**القـــــرار/** لدى التدقيق والمداولة وجد ان الطعن التمييزي مقدم ضمن المدة القانونية تقرر قبوله شكلاً ولدى عطف النظر على القرار المميز وجد انه غير صحيح ومخالف لقانون ذلك لان المميز/المدعي/ لجأ الى رفع الدعوى دون الاعتداد بشرط التحكيم وان المميز عليه/المدعى عليه/ لم يعترض على ذلك في الجلسة الاولى المؤرخة ٢٠١٤/٣/١٧ وان طلب استئخار الدعوى جاء بعد عدة جلسات المرافعة وبذلك جاز نظر الدعوى واعتبار شرط التحكيم لاغياً اعمالاً للفقرة الثالثة من المادة ٢٥٣ من قانون المرافعات المدنية مع الاشارة الى ان العقد موضوع الدعوى لم يدخل حيز التنفيذ لكي تقرر المحكمة اعتبار الدعوى مستأخرة الى نتيجة حسم النزاع من قبل المحكمين عليه ولما تقدم قرر نقض القرار المميز واعادة اضبارة الدعوى الى محكمتها للسير فيها مجدداً في النقطة التي توقفت عندها واصدار القرار الموافق للقانون وعلى ان يبقى رسم التمييز تابعاً للنتيجة وصدر القرار بالاتفاق في ٢٠١٥/٥/٦ .

**الرئيـس**

**شاكر شريف حسين**

A//

Kurdistan Region – Iraq

Judicial Council

Presidency of the Court of Appeals

Irbil Region

No. 117/T/2015

Date 6/5/2015

The Court of Appeals for the Irbil Region was convened as court of cassation on 5/6/2015 under President Shaker Sharif Hussein and with members Vice President Sameh Uthman Yunus and Judge Mohamad Mustafa Mahmoud, appointed to adjudicate in the name of the people, and the following ruling was issued:

**Appellant (Plaintiff) / Designated Director for the Empire World Co., and his position, represented by its attorney Afan Mohsen Rashid**

**Appellee (Defendant) / Designated Director for Kazeerom Co. and his position, represented by his attorney Sarmad Haji**

The Court of First Instance of Irbil in session dated 4/12/2015, in the initial Suit No. 484/B/2015, ruled to postpone the suit due to the presence of conditions of arbitration in the contract signed by the two parties, as per section 3 of Article 253 of the Civil Litigation Law. The Appellant / Plaintiff did not accept the ruling and his attorney filed an appeal for cassation requesting that the ruling be overturned for the reasons stated in the cassation plea, with paid fee, dated 4/19/2015, duly filed and entered for review and consultation:

**The Ruling:** Upon review and consultation it was found that the cassation appeal was submitted within the legal period and is procedurally accepted, and upon fair consideration of the appealed ruling it was found to be invalid and contrary to the law, insofar as the Appellant / Plaintiff brought the lawsuit without regard for the conditions of arbitration, and the Appellee / Defendant did not object to this in the first session dated 3/17/2014, and the request to postpone the suit came after several litigation sessions, and thus the suit was allowed to be heard and the conditions of arbitration considered null as per section 3 of Article 253 of the Civil Litigation Law, noting that the contract in dispute was not yet in effect so as to merit the court's ruling to postpone the suit until resolution of the dispute by the litigants, and in light of the above the Court has decided to overturn the appealed ruling and send the case back to the court to be heard again from the point at which it was adjourned and a ruling should be passed consistent with the law, and the fee for cassation should be retained awaiting the result. This ruling was issued by consensus on 5/6/2015.

**President**

**Shaker Sharif Hussein**



**Beyond Words**

Translation | Interpretation | Consulting
**Connecting Cultures Through Language**

## TRANSLATOR'S CERTIFICATION

We, Beyond Words, LLC, hereby certify that the English translation <u>Kurdistan Region Court of Appeals Decision No. 117/T/2015 dated 6/5/2015</u> is a true and accurate version of the original Arabic document. We further certify that we are competent in both Arabic and English to render and certify such translation.

Beyond Words, LLC Signature:     *Ghada Attieh*

Beyond Words, LLC Printed Name:     *GHADA ATTIEH*

NOTARY

District of Columbia: SS

Subscribed and Sworn to before me, in my presence, this 1ˢᵗ day of July , 2016

_____
Notary Public, DC

MARALE GARABETIAN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires May 14, 2018

My commission expires on 05/14 , 2018 .



Beyond Words, LLC
910 17th Street NW
Suite 415
Washington, DC 20006
Telephone: (202) 419-1805
info@beyond-words.us
www.beyond-words.us

<u>**CERTIFICATE OF COMPLIANCE**</u>

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*5,206*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>July 7, 2016</u>              <u>/s/ D. Michelle Douglas</u>
                                          *Counsel for Appellant*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 7th day of July, 2016, I caused this Reply Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Mukti N. Patel
Fɪsʜᴇʀ Bʀᴏʏʟᴇs, LLP
100 Overlook Center, 2nd Floor
Princeton, New Jersey  08540
(609) 436-9898

*Counsel for Appellees*

I further certify that on this 7th day of July, 2016, I caused the required copies of the Reply Brief of Appellant to be hand filed with the Clerk of the Court.

/s/ D. Michelle Douglas
*Counsel for Appellant*